### WRIGHT v. COTTEN.

(Filed November 15, 1905).

*Bankruptcy — Action by Trustee — Issues — Preference — Fraud as Element — Payment of Money — Transfer of Property—Creditor's Knowledge of Preference—Agent's Knowledge.*

1. Issues arise upon the pleadings and not upon evidential facts. All that is requisite is that the court shall submit issues in such form as, when answered either way, may be the basis for its judgment.

2. A payment of money is a transfer of property under the definition of the word "transfer" as used in the bankrupt act.

3. To make a transfer voidable within the provisions of the bankrupt act, it is necessary to establish: (1) The insolvency of the transferrer. (2) The obtaining by the creditor of a larger percentage of his debt than any other creditor of the same class. (3) The giving of a preference within four months before the filing of a petition in bankruptcy. (4) Reasonable cause upon the part of the creditor to believe that a preference was intended.

4. The creditor must have reasonable cause to believe the debtor insolvent in fact, as a foundation for reasonable cause to believe that an unlawful preference was intended.

5. Where it is established that debtor at the time of the alleged preferential payment to his father, was the latter's general financial agent, and that he practically paid himself for his father, it follows that his personal knowledge of his own utter insolvency is imputable to his principal and that the father is affected by all knowledge possessed by his son, his agent.

6. In an action by a trustee in bankruptcy to recover an unlawful preference, it is not necessary for a plaintiff to show a fraudulent intent upon the part of the creditor, or that the latter did not give a present fair consideration for the transfer.

7. Where the agent of the creditor had reasonable cause at the time to believe the debtor insolvent, and knew that the transaction was in fraud of the bankruptcy law, it is the same as if the creditor himself had taken part therein, with the same cause to believe and the same knowledge.

ACTION by J. C. Wright, Trustee in Bankruptcy of C. L. Cotten, against J. F. Cotten, heard by *Judge Henry R. Bryan* and a jury, at the March Term, 1905, of the Superior Court of STANLY.

The following issues were submitted:

1. Was the payment by the bankrupt, C. L. Cotten, of $3,000 to his father, John F. Cotten, made with the intent and purpose on the part of C. L. Cotten to hinder, delay or defraud his creditors or any of them? Ans. Yes.

2. Did John F. Cotten, the defendant, receive or purchase in good faith, the $3,000 for a present, fair consideration? Ans. No.

3. Did C. L. Cotten, bankrupt, while insolvent and within four months before the filing of the petition in bankruptcy against him, pay to his father, John F. Cotten, or his agent, acting in the matter for him, $3,000? Ans. Yes.

4. If so, did the person receiving the payment of the defendant Cotten, or his agent acting in the matter for him, have reasonable cause to believe that the bankrupt, C. L. Cotten, intended by said payment to prefer his father over other creditors, as alleged in the complaint? Ans. Yes.

5. What sum, if any, is the plaintiff entitled to recover of the defendant? Ans. $3,000 with interest.

From the judgment rendered, the defendant appealed.

*John N. Wilson* and *King & Kimball* for the plaintiff.
*Theo. F. Kluttz* and *J. R. Price* for the defendant.

BROWN, J. The plaintiff sues to recover $3,000 which he alleges that C. L. Cotten, a bankrupt at the time insolvent, and within four months of the filing of the petition in bankruptcy against him, paid to John F. Cotten, his father, in money, and that at the time John F. Cotten had knowledge that C. L. Cotten was insolvent, and intended thereby to give him an unlawful preference and that his purpose in making said payment was to hinder, delay and defraud his creditors. The defendant, administrator of John F. Cotten, denied the several material allegations of the complaint, but admitted that the $3,000 was paid to John F. Cotten by C. L. Cotten in payment of a debt, and within the four months as alleged.

The evidence discloses the following uncontradicted facts: On March 27, 1901, the bankrupt's store at Albemarle was destroyed by fire. His goods were insured in the sum of $8,000—$2,000 in the North Carolina Home, $4,000 in the Traders' Ins. Co., and $2,000 in the Virginia State. On February 21, 1902, he compromised the policy in the North Carolina Home for $1,000 cash. On February 13, previous, his attorney compromised the $4,000 Traders' policy and received $2,500. The attorney retained $500 for services and paid the bankrupt $2,000, which money or check for the same he deposited in the Cabarrus Savings Bank, of Albemarle, on February 19, 1902, to the credit of John F. Cotten, and in his name. The cash the bankrupt received from the North Carolina Home he deposited in the Davis-Wiley Bank, Salisbury, on February 22, 1902, in the name of and to the credit of John F. Cotten. On April 7 an involuntary petition in

bankruptcy was filed, and on April 25 he was adjudged a bankrupt and the plaintiff elected trustee in bankruptcy.

There are several exceptions appearing in the record, which we have carefully examined, but deem it unnecessary to notice except to say that they are without merit.

The only exceptions we desire to notice more at length are those relating to the issues and the burden of proof. We think the issues submitted are more than sufficient to develop the whole case and give plaintiff and defendant full scope to present to the jury evidence upon every issue raised by the pleadings. Issues arise upon the pleadings and not upon evidential facts. All that is requisite is that the court shall submit issues in such form as when answered either way may be the basis for its judgment. *Cumming v. Barber,* 99 N. C., 332. In his very able argument, as well as in his brief, Mr. Kluttz, counsel for defendant, laid almost entire stress upon the alleged errors of the trial judge in charging upon the burden of proof in respect to the first and fourth issues. In the view we take of this case it is unnecessary to consider the charge in detail in reference to the issues. The Bankrupt Act defines a preference, section 60, (a) to consist in the payment by a debtor to one creditor of a greater percentage of his debt than he is able to pay to all other creditors of the same class, and (b) the same section denounces the penalty imposed on the giving of a preference to be that if such preference has been made, and the person receiving it or his agent acting in the matter for him had reasonable cause to believe that a preference was intended, then the same is voidable and made recoverable by the trustee.

From the reading of these sections it is clear that the making of the preference and incurring its penalty are wholly independent of any idea of fraud whatever—the statutes simply saying in plain terms what a preference is, and in terms equally plain the penalty of it.

A payment of money is a transfer of property under the

definition of the word "transfer" as used in the sections of the Bankrupt Act. *Picie v. Trust Co.,* 182 U. S., 438; *In re Fixen,* 50 L. R. A., 605; *Sherman v. Luchart,* 70 S. W., 388. To make a transfer voidable within the provisions of the act, it is necessary to establish four facts:

1. The insolvency of the transferrer.

2. The obtaining by the creditor of a larger percentage of his debt than any other creditor of the same class.

3. The giving of a preference within four months before the filing of a petition in bankruptcy.

4. Reasonable cause upon the part of the creditor to believe that a preference was intended. *Sebring v. Wellington,* 63 N. Y. App. Div., 498.

We think His Honor should have instructed the jury upon the entire evidence, and in any reasonable view of it, if found to be true, that the plaintiff is entitled to recover the $3,000, and that they should answer the issues, as the jury did answer them. The jury having found all the issues in favor of the plaintiff thereby declared that they found the facts to be as testified to by the witnesses, inasmuch as the defendant offered nothing in contradiction. The uncontradicted evidence establishes each of the four essential facts necessary to a recovery, and we do not see that any other inferences can be reasonably drawn from it.

The insolvency of the bankrupt at the time he made the alleged payment is an irresistible conclusion from the evidence. His indebtedness amounted to from $12,000 to $16,-000, and his assets, "exclusive of property transferred or conveyed in fraud of creditors," amounted to $13,000. Hence it follows that the admitted payment of the $3,000 within the four months was a much larger percentage of John F. Cotten's debt than could be paid any other creditor of the same class.

This brings us to consider the fourth essential fact. We admit as broadly as the defendant contends for, that the cred-

itor must have reasonable cause to believe the debtor insolvent in fact, as a foundation for reasonable cause to believe that an unlawful preference was intended. *In re Eggert,* 3 Am. Bank. Rep., 541; *Grant v. Bank,* 97 U. S., 80. We think the uncontradicted ,and unexplained evidence establishes that at the time of and before the preferential payment, C. L. Cotten, the bankrupt, was the general confidential financial agent of his father, John F. Cotten, and that he practically made such payment to himself as his father's agent. The testimony of several witnesses tends to .prove conclusively that for some time prior to his failure, C. L. Cotten had charge of all the business of John F. Cotten, in Albemarle; that he was his financial agent there; that people generally transacted business with C. L. Cotten for John F. Cotten, and that he collected and paid out money for his father. The evidence shows that C. L. Cotten had control of the bank account of John F. Cotten from 1900 till the later's death; that he drew checks against it and signed them "John F. Cotten, by C. L. Cotten," and that such checks were paid by the bank. The officers of the bank recognized him and did business with him for several years, and at the time when the payment was made, as the generally accredited financial agent of John F. Cotten. In fact, C. L. Cotten drew on this very insurance money, deposited to his father's credit by such checks, and they were always honored. A review of the entire evidence tending to prove the agency is unnecessary and would be tedious. Suffice it to say, it establishes the agency most conclusively, and there is nothing to contradict it. The only witness offered by the defendant was the daughter of John F. Cotten, whose evidence tended to contradict nothing and to prove no material fact, except that John F. Cotten learned speedily of the fire which destroyed his son's property.

It being established that C. L. Cotten, at the time of the payment, was his father's general financial agent and that he practically paid himself for his father, it follows that his per-

sonal knowledge of his own utter insolvency is imputable to his principal, and that the father is affected by all knowledge possessed by the son, his agent.

It is not necessary for the plaintiff to show a fraudulent intent upon the part of John F. Cotten or that John F. Cotten did not give a present fair consideration for the $3,000. Therefore the first and second issues were unnecessary, although found for the plaintiff. The two vital issues are the third and fourth. If the effect of this transaction is to give John F. Cotten a greater percentage of his debt than others of the same class get, it is voidable and the money may be recovered, provided John F. Cotten had reasonable cause to believe that it was intended as a preference. *Crooks v. Bank,* 2 Am. Bankrupt Cases, 243; *Blakey v. Bank, ibid.,* 459.

There is no evidence that John F. Cotten personally knew of or participated in this transaction. His son, who acted in the dual relation of debtor and general financial agent, did all that was done. In his capacity as financial agent he received the money for his father from himself, as debtor, and as agent checked on it and paid it out. This agent-debtor, C. L. Cotten, evidently knew he was hoplessly insolvent, and he therefore hurried to compromise his insurance policy and deposited the proceeds to his father's credit, and thereby gave him an unlawful preference over the other creditors. No other inference can be reasonably drawn from the uncontradicted evidence.

It is an old and well established rule that the principal is bound by any notice acquired by his agent during the course of the agency. It is a familiar maxim of the law that "notice to the agent is notice to the principal." Reinhard on Agency, sec. 354.

This rule of constructive notice to the principal is based upon the identity of principal and agent, and upon the theory that the agent has discharged his duty by giving information to his principal.

Therefore, it is held that where the agent had reasonable cause at the time to believe the debtor insolvent, and knew that the transaction was in fraud of the bankrupt law, it is the same as if the creditor had himself taken part therein, with the same cause to believe and the same knowledge. *Sage v. Wyncoop,* 21 Fed. Cases, 147; s. c., 104 U. S., 319; *Rogers v. Palmer,* 102 U. S., 263; Collier on Bankruptcy, 425. The authorities are uniform and abundant that any knowledge possessed by the agent of the creditor may be imputed to the latter.

We thus see that every essential element of proof necessary to a recovery is disclosed by the uncontradicted evidence. No counter proof was offered and no explanation, and, as but one inference can reasonably be drawn from all the evidence, the court would have been justified in instructing the jury that in any view of the evidence, if the jury found it to be true, the plaintiff is entitled to recover the $3,000.

Affirmed.