WEEKS, Trustee, v. SPOONER.

(Filed October 30, 1906).

*Bankruptcy—Preference—Consideration.*

1. In an action by a trustee in bankruptcy to recover certain cross-ties, or their value, received by defendant within four months prior to the bankruptcy, where at the time the ties were paid for and shipped, the defendant had no knowledge of the insolvency of the bankrupt, and he paid a present consideration for them, the plaintiff is not entitled to recover, though the ties had still to be inspected, and those not coming up to specifications could be rejected.

2. In an action by a trustee in bankruptcy to recover certain cross-ties, or their value, received by defendant within four months prior to the bankruptcy, where the ties were cut for the defendant under contract for which he paid a present consideration, the ties having been billed to him and paid for by draft drawn for the amount, the plaintiff is not entitled to recover, though the defendant knew at the time he took possession of them that the bankrupt was insolvent and contemplated bankruptcy, as the title passed to him when he took possession.

3. A preference within four months prior to bankruptcy is held invalid, because it diminishes the common fund by the sum or property given the preferred creditor. But when there is a full and fair present consideration, it is not a preference; for the sum is not diminished, the debtor receiving in exchange the value of the property transferred.

ACTION by C. D. Weeks, trustee in bankruptcy of G. T. Flynn & Co., against H. J. Spooner, Jr., heard by *Judge*

*James L. Webb* and a jury, at the May Term, 1906, of the Superior Court of NEW HANOVER. From a judgment sustaining a demurrer to the evidence, the plaintiff appealed.

*Davis & Davis* and *E. K. Bryan* for the plaintiff.
*Rountree & Carr* and *H. McClammy* for the defendant.

CLARK, C. J. This action is brought by the plaintiff as trustee in bankruptcy of Flynn & Co., against the defendant to recover certain cross-ties, or their value, received or taken possession of by the defendant within four months prior to the bankruptcy of Flynn & Co, and therefore alleged to be a preference within the bankrupt law. Flynn & Co. contracted with the defendant, who lived in Rhode Island, to furnish him "not less than 60,000 nor more than 75,000 cross-ties," of specified description, at 28 cents apiece, said ties to be delivered on vessel at Wilmington; that when as many as 2,000 at any time were assembled at Wilmington, Flynn & Co. were to notify the defendant and could send him a bill or invoice of the same, and draw therefor 25 cents for each tie; that the ties were to be inspected and counted by the defendant, and the number accepted should be settled for at 25 cents each. Forty-eight thousand cross-ties were billed to the defendant, on which invoices he paid 25 cents each, *i. e.,* $12,000.

Of the ties which the defendant received, 8,879 were shipped to him on the schooner "W. P. Hood" without being inspected or counted, and were still at sea *en route* to Rhode Island when the bankruptcy occurred. When these were shipped the defendant had no knowledge of the insolvency of Flynn & Co. Another lot of 3,744 ties were in the swamp in Brunswick County when the defendant, learning that Flynn & Co. were about to go into bankruptcy, went over and took possession of the same before the petition in bankruptcy was filed, and shipped the cross-ties. All these cross-ties, and

more, had been invoiced to the defendant and drafts at the rate of 25 cents for each tie invoiced had been paid. After allowing for these two lots (and those shipped previously), it was found that Flynn & Co. had invoiced more ties than they had shipped and had been paid some $5,000 more than was due them. The defendant filed his claim in bankruptcy for said amount overpaid by him.

There can be no question as to the first lot of ties. The evidence is uncontradicted that when these ties were paid for and shipped, the defendant had no knowledge of the insolvency of Flynn & Co., if they were then insolvent, and that he paid a present consideration. It is true, the ties had still to be inspected, and those not coming up to specifications could be rejected; but that only affected the amount to be paid, and did not prevent the title passing to the defendant on delivery to the carrier.

As to the second lot, also, the defendant paid a present consideration, the ties having been billed to him and paid for by draft drawn for the amount. The title passed to him when he took possession of them. Though he knew at that time that Flynn & Co. were insolvent and contemplated bankruptcy, he took only his own property which he had paid for. *Chase v. Denny,* 130 Mass., 566. The requirement that the ties should be delivered on vessel in Wilmington was a stipulation which could be waived by the defendant.

A preference within four months prior to bankruptcy is held invalid, because it diminishes the common fund by the sum or property given the preferred creditor. But when there is a full and fair present consideration, it is not a preference, for the fund is not diminished, the debtor receiving in exchange the value of the property transferred. Here, the defendant's case is still stronger, for he not only paid the present consideration, but by virtue of the invoice and draft drawn against it which he paid, the right to possession of the ties had passed to him, and of course the title when he actu-

142—31

ally took possession. The cross-ties were cut for the defendant under his contract. These specific ties were invoiced and paid for; certainly those shipped and those taken possession of were identified.

In nonsuiting the plaintiff there was

No Error.

WALKER, J., concurs in result.