H. C. BRIDGERS, TRUSTEE, v. FARMERS BANKING AND TRUST
COMPANY AND B. M. HART,

AND

H. C. BRIDGERS, TRUSTEE, v. FARMERS BANKING AND TRUST COM-
PANY, AND B. M. HART, D. T. WILLIAMS, J. C. RUFFIN AND T. P.
JENKINS.

(Filed 19 March, 1930.)

**1. Bankruptcy C c—Definition of preference which may be set aside.**

A preference given a creditor which can be set aside under the pro-
visions of the Federal Bankruptcy Act must be one made within four
months preceding the filing of the petition, when the debtor is insolvent,
with knowledge by the creditor or information sufficient to put him
upon inquiry that will lead to knowledge of the debtor's insolvency, and
by which such creditor will receive a larger per cent of his debt than
others in the same class or which will diminish or deplete the bankrupt's
assets.

**2. Same—Upon conflicting evidence as to whether preference diminished
bankrupt's assets the question is for the jury.**

Where there is conflicting evidence as to whether the preferences
alleged to have been made by a bankrupt diminished or depleted his
assets, it being contended by the creditor that they were made from the
sale of collateral hypothecated to secure the debt more than four months
preceding the filing of the petition in bankruptcy, the issue should be
submitted to the jury.

**3. Same—Actual notice of creditor of insolvency is not necessary if he
was put upon inquiry which would have led to such knowledge.**

Actual notice of the creditor of the insolvency of a bankrupt is not
required to set aside a preference under the provisions of the Federal
Bankruptcy Act, but the creditor is required to exercise ordinary care to
ascertain the facts, and where he has sufficient knowledge to put him
upon inquiry he is chargeable with all the facts which such inquiry would
have disclosed, and in this case *held:* evidence of such knowledge was
sufficient to be submitted to the jury.

**4. Bankruptcy C e—Trustee in bankruptcy has burden of proving prefer-
ence depleted bankrupt's assets.**

The trustee in bankruptcy has the burden of showing that payments on
a preëxisting debt made by a bankrupt within four months prior to
the filing of the petition in bankruptcy diminished or depleted the assets
of the bankrupt, and where there is conflicting evidence as to whether
the bankrupt's estate was thereby diminished or depleted an issue is
raised for the determination of the jury.

**5. Evidence F e—Where plaintiff has introduced admissions in the answer
defendant may introduce paragraphs explaining such admissions.**

Where the plaintiff in the action has offered in evidence certain allega-
tions of the complaint and admissions in the answer, it is competent for
the defendant to introduce all paragraphs of the answer in which such
admissions were explained or modified, but not of extraneous matter.

**6. Trial B c—Objection to admission of evidence is untenable where evidence of same character has been admitted without objection.**

Where certain evidence has been introduced on the trial without objection the complaining party may not successfully except to the introduction of other evidence of substantially the same character.

CIVIL ACTION, before *Devin, J.,* at November Term, 1929, of EDGE-COMBE.

Two actions were instituted by H. C. Bridgers, trustee in bankruptcy of Carolina Leaf Tobacco Company. In both suits the plaintiff alleged that within four months of the bankruptcy of the Carolina Leaf Tobacco Company the said bankrupt had made preferential payments to the defendant bank upon certain notes held by said bank. Upon said notes there were certain individual endorsers, but not the same endorsers on each note. Hence separate actions were instituted, but both actions were consolidated and tried together.

The Carolina Leaf Tobacco Company was adjudged a bankrupt in June, 1925. On 3 April, 1925, the said bankrupt executed and delivered to the defendant bank a note for $5,000, which was endorsed by certain individuals who were directors of the bankrupt. This note represented a renewal of a larger indebtedness which had been reduced from time to time previous to 3 April, 1925. On 2 May, 1925, the bankrupt executed and delivered to said bank a note for $3,000. The property of the bankrupt was advertised for taxes and there were certain claims for labor due. The proceeds of the $3,000 note was used to pay taxes and to discharge unpaid claims for labor, and a balance of $1,250 was credited by the bank on the $5,000 note aforesaid. On 14 May, 1925, the sum of $400 was credited on the $5,000 note, and on 21 May, 1925, there were two credits on the $3,000 note, to wit, one of $758.75, the other of $1,699.90. There was evidence tending to show that the $758.75 credit was derived from the sale of hogshead material and tobacco by the bankrupt, the proceeds thereof being paid to the defendant bank, and that the $1,699.90 credit was derived from the sale of tobacco by the bankrupt, the proceeds thereof having been paid to the defendant bank. There was further evidence tending to show that tobacco warehouse receipts were deposited by the bankrupt as collateral to all of said loans, and the defendants contended that the credits on both of said notes were derived from the sale of collateral duly deposited with the defendant bank at the time of the execution of said notes. There was evidence to the contrary.

The issues submitted to the jury with respect to the $3,000 note were as follows:

1. "Did the payment of $758 on the $3,000 note constitute a preference under the bankruptcy laws of the United States, as alleged in the complaint?"

2. "Did the payment of $1,699 on the $3,000 note constitute a preference under the bankruptcy laws of the United States as alleged in the complaint?"

The jury answered the first issue "Yes," and the second issue, "No."

The issues submitted on the $5,000 note were as follows:

1. "Did the payment of the $1,250 on the $5,000 note constitute a preference under the bankruptcy laws of the United States as alleged in the complaint?"

2. "Did the payment of the $400 on said $5,000 note constitute a preference under the bankruptcy laws of the United States, as alleged in the complaint?"

The jury answered the first issue, "Yes," and the second issue, "Yes."

From judgments upon the verdicts the defendants appealed.

*Henry C. Bourne for plaintiff.*
*George M. Fountain for defendants.*

BROGDEN, J. What are the constituent elements of a voidable preference as contemplated and defined by section 60 of the National Bankruptcy Act?

The Bankruptcy Act, section 60(a) provides in substance that: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition or after the filing of the petition and before the adjudication, . . . made a transfer of any of his property, and the effect of the . . . transfer will be to enable any of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class," etc. Section 60(b) provides in substance that if the bankrupt shall make a transfer of his property amounting to a preference "and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

It is declared by the textwriters that a preference consists of eight elements. Remington on Bankruptcy, 3 ed., Vol. 4, sec. 1630, *et seq.* These elements so far as applicable to the case at bar may be classified as follows:

1. The insolvency of the debtor or bankrupt at the time the preference is given.

2. The preference must be given within four months prior to the filing of the petition in bankruptcy.

3. The creditor receiving the preference must thereby obtain a larger percentage of his debt than any other creditor of the same class.

4. The giving of the preference must diminish or deplete the estate of the debtor bankrupt.

5. The person receiving such preference must have reasonable cause to believe, at the time, that the enforcement of the transfer would effect a preference. *Wright v. Cotten,* 140 N. C., 1, 52 S. E., 141; *Weeks v. Spooner,* 142 N. C., 479, 55 S. E., 432; *McNeeley v. Shoe Co.,* 170 N. C., 278, 87 S. E., 64; Remington Bankruptcy, 3 ed., *supra.*

The evidence discloses that the bankrupt was a debtor of the defendant bank at the time the credits were applied, and that all of such credits were applied within the period of four months. However, the defendants contend that most of the credits were derived from the proceeds of the sale of collateral duly pledged by the bankrupt, and hence such credits did not diminish or deplete the estate of debtor. The principle invoked by the defendant upon this aspect of the case was thus expressed in *Weeks v. Spooner,* 142 N. C., 479. "A preference within four months prior to bankruptcy is held invalid, because it diminishes the common fund by the sum or property given the preferred creditor. But when there is a full and fair present consideration, it is not a preference, for the fund is not diminished, the debtor receiving in exchange the value of the property transferred. However, the generally accepted principle, adopted by the courts, is, that there can be no preferential transfer without a depletion of the debtor's estate, and the burden of showing such depletion by payments or credits, made upon a preëxisting indebtedness, is upon the trustee. *Miller v. Fisk Tire Co.,* 11 Fed., 2d, 301; *New Port Bank v. Herkimer Bank,* 225 U. S., 178, 56 L. Ed., 1042.

The evidence was conflicting upon the question of depletion of the estate resulting from the payments made by the debtor. Therefore, the trial judge properly submitted such issue of fact to the jury.

There was also sufficient evidence to be submitted to the jury upon the question of knowledge or notice of insolvency at the time the credits were made. All the authorities concur in declaring that actual knowledge is not required, but reasonable cause to believe that a preference would result is sufficient to impose liability. Hence, a creditor receiving a payment or "transfer" within the period of four months must exercise ordinary care to ascertain the facts, and, if the facts are sufficient to put him upon inquiry, he is chargeable with all the knowledge that such reasonable inquiry would have disclosed. *Wilson v. Taylor,* 154 N. C., 211, 70 S. E., 286.

In the case at bar the defendant knew that the property of the debtor was being advertised for sale for taxes, and that the debtor was not able in due course of business to meet payments for work and labor done. It was also in evidence that the president of defendant bank attended a meeting of the stockholders of the bankrupt some time prior to 2 May,

1925. In the meeting there was a general discussion of the financial condition of the bankrupt. The president of the defendant bank testified: "From that discussion I was of the opinion that unless some of the directors helped them and they collected some of the book accounts they had in New York where they had sold tobacco, they would have a hard time getting along unless some one wanted to endorse for them." Certainly from all the facts and circumstances disclosed by the record, there was sufficient evidence to be submitted to the jury upon the question of notice.

The plaintiff offered certain allegations of the complaint and certain admissions in the answers. Thereupon the defendant sought to offer in evidence all paragraphs of the answers in which such admissions were contained. The trial judge permitted the defendant to offer such portions of the answers as tended to modify or explain the admission therein offered by the plaintiff, but declined to permit the defendant to introduce other allegations of extraneous matter or such as purported to deal with the history and development of the controversy. The ruling of the trial judge is upheld for the reason that the defendant was only entitled to offer from his answer such allegations as actually explained or modified the admission offered by the plaintiff. *Jones v. R. R.,* 176 N. C., 260, 97 S. E., 48; *Weston v. Typewriter Co.,* 183 N. C., 1, 110 S. E., 581; *Malcolm v. Cotton Mills,* 191 N. C., 727, 133 S. E., 7.

The defendant also objected to the testimony of plaintiff to the effect that the payments on the notes diminished the assets of the North Carolina Leaf Tobacco Company. The record, however, discloses that the plaintiff had already given the same testimony before objection was made. Hence such exception cannot be sustained.

In its final analysis, issues of fact were developed which were properly submitted to the jury, and the verdicts and judgments thereon are determinative.

No error.