A. M. BURNS, JR., TRUSTEE IN BANKRUPTCY OF M. RUBENSTEIN, v. WA-
CHOVIA BANK AND TRUST COMPANY, S. RUBENSTEIN AND
LAWRENCE RUBENSTEIN.

(Filed 27 January, 1931.)

**1. Bankruptcy C c—Where creditor has no actual knowledge of insolvency
nor of facts sufficient to put him on inquiry, payment will not be set
aside.**

A payment upon a debt owed by an insolvent within the four months
period specified in the Bankruptcy Act will not be declared void by the
courts unless the creditor receiving the payment had actual knowledge
of the insolvency at the time, or knowledge of such facts as would have
put a reasonable man under the circumstances upon inquiry leading to
such knowledge of insolvency, and the fact that the bankrupt sent out
notices of his insolvency to other creditors generally will not affect the
validity of the payment if the one receiving the payment was in ignorance
thereof.

**2. Same—Offset by bank of deposit against note of bankrupt is not a
preference within meaning of Bankrupt Act.**

The offset by a bank of the deposit of a bankrupt against his note is
not a prohibited preference within the meaning of the Bankrupt Act.

CIVIL ACTION, before *Moore, J.,* at November Term, 1930, of BUN-
COMBE.

M. Rubenstein was a merchant in the city of Asheville and filed a
voluntary petition in bankruptcy on or about 10 January, 1930, and
was duly adjudicated a bankrupt 13 January, 1930, and the plaintiff
is the trustee in bankruptcy.

On or about 9 April, 1929, the bankrupt borrowed $2,500 from the
defendant Wachovia Bank and Trust Company and executed a note
evidencing the loan. Said note was endorsed or guaranteed by the
father and brother of the bankrupt, to wit, the defendants, S. Ruben-
stein and Lawrence Rubenstein. On 28 May, 1929, the bankrupt paid
$500 on said note before the maturity thereof. On 7 June the balance
of $2,000 was renewed to 6 August. On 10 June, 1929, the bankrupt
borrowed an additional $500 from the defendant bank, and the $500
note and the $2,000 note were combined on 7 August, and renewed to
6 October. When the $2,500 note fell due it was renewed to 4 Decem-
ber. On 4 December, 1929, the bankrupt paid the sum of $124 and
renewed the balance of $2,400 to 3 February, 1930. The bankrupt
made the following payments on said note during December, 1929, to
wit: 16th, $500; 20th, $700; 23d, $500. On 27 December, 1929, the
bankrupt gave the defendant bank a check for $500, but at said time he
did not have sufficient funds in the bank to pay said check. On 7 Janu-
ary, 1930, the defendant bank applied the deposit of the bankrupt then

to his credit in the bank to said $500 check, and the guarantors of the bankrupt paid the balance of the indebtedness to said bank.

The bank required a financial statement from the bankrupt at the time the loan was made. This statement as of 1 January, 1929, showed assets aggregating $48,986.13 and liabilities of $5,000, thus disclosing an apparent net worth of $43,896.13. The bankrupt made deposits in the bank from time to time in due course of business and drew checks from time to time against said deposit.

There was evidence tending to show that a firm of attorneys in Asheville had received for collection a few claims against the bankrupt during the month of September, 1929. There was also testimony that certain creditors brought suits against the bankrupt in a court of the justice of the peace. In one suit summons was issued 17 December, 1929, for the purpose of collecting $50. The other summonses were issued on 27 December, but the evidence shows the cases were continued. On 24 December, the bankrupt sent out a letter to certain creditors disclosing his insolvent condition.

The plaintiff, as trustee in bankruptcy, brought this suit against the defendant bank to recover the payments which the bankrupt had made to the bank upon the note hereinbefore mentioned. The suit was instituted in the county court of Buncombe and the following issues were submitted to the jury:

1. "Did the payment of $124 by check dated 4 December, 1929, on the note constitute a preference under the bankruptcy laws of the United States, as alleged in the complaint?"

2. "Did the payment of $500 by check dated 16 December, 1929, on the note constitute a preference under the bankruptcy laws of the United States, as alleged in the complaint?"

3. "Did the payment of $700 by check dated 20 December, 1929, on the note constitute a preference under the bankruptcy laws of the United States, as alleged in the complaint?"

4. "Did the payment of $500 by check dated 23 December, 1929, on the note constitute a preference under the bankruptcy laws of the United States, as alleged in the complaint?"

5. "Did the payment of $500 by check dated 27 December, 1929, on the note constitute a preference under the bankruptcy laws of the United States, as alleged in the complaint?"

The jury answered the first issue "No"; the second issue "No"; the third issue "Yes"; the fourth issue "Yes," and the fifth issue "Yes."

Thereupon judgment was entered in the county court upon the verdict, and the defendant Wachovia Bank and Trust Company appealed to the Superior Court upon exceptions and assignments of error based upon the trial in the county court.

---

BURNS *v.* TRUST CO.

---

The pertinent part of the judgment in the Superior Court is as follows: "After examining the record and hearing the argument of counsel the Court is of the opinion that the lower court erred in overruling defendant's motion for judgment of nonsuit, as aforesaid, for that there is no evidence in the record that the defendant, at the time the various payments were made, as set forth in the complaint, had any notice of the financial condition of Rubenstein at the time the payments were made, or any reasonable cause to believe that he was in failing financial circumstances.

It is, therefore, ordered by the court that this cause be and it is hereby remanded to the General County Court, and the judge of said court is directed to enter a judgment of nonsuit in said cause and dismiss said action at plaintiff's cost, and that plaintiff pay the costs of this appeal."

From the foregoing judgment the plaintiff appealed.

*Joseph W. Little for plaintiff.*
*Ford, Coxe & Carter and J. A. Patla for defendant.*

BROGDEN, J. Did the payments made by the bankrupt upon the note constitute a voidable preference as contemplated and defined by the National Bankruptcy Act?

The pertinent elements of a voidable preference are discussed in *Bridgers v. Trust Co.,* 198 N. C., 494, 152 S. E., 393. In the case at bar it is clear that the bankrupt was insolvent when the payments were made, and that all the payments were made within the four months period. Therefore, the determinative question is whether the defendant bank had reasonable cause to believe at the time the payments were made that such payments would effect a preference.

In the *Bridgers case, supra,* this Court said: "All the authorities concur in declaring that actual knowledge is not required, but reasonable cause to believe that a preference would result is sufficient to impose liability. Hence, a creditor receiving a payment or 'transfer' within the period of four months must exercise ordinary care to ascertain the facts, and, if the facts are sufficient to put him upon inquiry, he is chargeable with all the knowledge that such reasonable inquiry would have disclosed." The phrase "reasonable cause to believe" has been discussed and applied by many courts and textwriters. Manifestly, there is no hard and fast rule or inflexible standard known to the law by which the phrase may be applied with certainty and precision to a given state of facts. For this reason each case is viewed and interpreted in the light of the surrounding circumstances. *Mr. Justice Bradley,* in *Grant v. Bank,* 97 U. S., 80, 24 Law Ed., 971, wrote: "Hundreds of men constantly continue to make payments up to the very eve

of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose.

"The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they know anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided." *Boone v. Merchants and Farmers Bank,* 285 Fed., 183 (opinion delivered by *District Judge Henry G. Connor); Talty v. Rosenthal,* 14 Fed. (2d), 239; *Miller v. Martin,* 17 Fed. (2d), 291; *Everett v. Warfield Mining Co.,* 37 Fed. (2nd), 328.

The evidence does not disclose that the defendant bank received a copy of the letter which the bankrupt sent to certain creditors on 24 December, nor did it have any actual knowledge or information with reference to the suits instituted in a court of a justice of the peace, and all the evidence tends to show that the bankrupt and the bank were dealing in the ordinary and usual course of business. Therefore, we are of the opinion that the trial judge ruled correctly.

Perhaps the evidence would have been sufficient to put the bank upon notice at the time it applied the deposit of the bankrupt upon the indebtedness. However, it has been held that the right of setoff by a bank against an insolvent depositor is not a preference. *Bank v. Massey,* 192 U. S., 138, 48 Law Ed., 380; *U. S. v. Butterworth,* 267 U. S., 387, 69 Law Ed., 672; *Hodgin v. Bank,* 124 N. C., 540, 32 S. E., 887; *Coburn v. Carstarphen,* 194 N. C., 368, 139 S. E., 596.

Affirmed.