IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-587

Filed 4 June 2025

N.C. Industrial Commission, I.C. Nos. 13-710197, 20-734821

BESSIE PEACOCK CLOER, Widow and Administrator of the Estate of JAMES RICHARD CLOER, Employee, Plaintiff,

v.

KING ARTHUR INC., Employer; THONET INDUSTRIES INC., Employer; SCH LIQUIDATING CORP., Employer; SHELBY WILLIAMS INDUSTRIES, INC., Self-Insured Employer, and NORTH CAROLINA SELF-INSURANCE SECURITY ASSOCIATION, Defendants.

Appeal by Plaintiff from opinion and award entered 13 March 2024 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 January 2025.

*Wallace and Graham, P.A., by Edward L. Pauley, for Plaintiff-Appellant.*

*Stuart Law Firm, PLLC, by William A. Piner, II, and Catherine R. Stuart, for Defendant-Appellee North Carolina Self-Insurance Security Association.*

COLLINS, Judge.

Plaintiff Bessie Peacock Cloer, as administrator of the estate of her deceased husband, James Richard Cloer, appeals from the North Carolina Industrial Commission's opinion and award denying Plaintiff's motion to add the North Carolina Self-Insurance Security Association as a party. As there is no "covered claim" for Plaintiff to pursue against the Association, the Commission did not err by denying

Plaintiff's motion to add the Association as a party.

## I. Background

James Richard Cloer ("Decedent") worked at a furniture factory for many years, including from 1987 to 1997. The factory was owned and operated by Shelby Williams from 1987 through 30 June 1999. From June 1987 to 30 June 1988, Shelby Williams had workers' compensation coverage with Hartford Accident and Indemnity Company. Shelby Williams was approved to self-insure its workers' compensation claims liabilities by the North Carolina Department of Insurance and was a member of the Association from 1 July 1989 through 30 June 1999.

On 5 May 1999, Shelby Williams and Falcon Products, Inc. executed an "Agreement and Plan of Merger" whereby Shelby Williams was acquired by Falcon and became Falcon's affiliate. Falcon was never a licensed North Carolina self-insurer and maintained workers' compensation insurance coverage during the period it operated in North Carolina.

On 1 January 2005, Falcon and its affiliates, including Shelby Williams, filed a Chapter 11 voluntary petition for bankruptcy in the United States Bankruptcy Court of the Eastern District of Missouri. All pre-petition workers' compensation claims, including those incurred against Shelby Williams, were paid. The bankruptcy plan made no provision for workers' compensation claims that had been incurred but not yet reported. The bankruptcy court approved Falcon's plan for reorganization, and on 28 November 2005, Falcon officially changed its name to Commercial

Furniture Group, Inc. ("CFG"). Shelby Williams then merged with CFG in December 2005. As a result, Shelby Williams ceased to exist, and CFG became the sole surviving entity.

Approximately sixteen years after his last date of employment with Shelby Williams, in February 2013, Decedent was diagnosed with mesothelioma. Decedent filed a Form 18B with the Commission, alleging that his diagnosis was the result of asbestos exposure throughout his employment. Decedent died from mesothelioma on 6 July 2013, and Plaintiff filed an Amended Form 18B with the Commission in October 2013 to add Shelby Williams as a defendant and a claim for death benefits.

Five years later, Plaintiff moved to add CFG as a defendant; the motion was granted by the Executive Secretary of the Commission in August 2018. Plaintiff then moved to add the Association as a defendant; the motion was granted by the Executive Secretary of the Commission in November 2020. The Association filed a Form 33, Request that the Claim be Assigned for Hearing, alleging that the Association is not a proper party.

Plaintiff, Shelby Williams, and Hartford executed a "Final Compromise Settlement Agreement" on 9 February 2022 to settle Plaintiff's claim against Shelby Williams and Hartford for $50,000 for "any and all periods of coverage, known or unknown, for which Hartford could be liable." Additionally, Plaintiff and CFG executed a "Final Compromise Settlement Agreement and Release" on 27 August 2022 to settle Plaintiff's claim against CFG for $3,000 for "the period of self-insurance

by Shelby Williams for which [CFG] may be liable." This settlement agreement released CFG "from any and all future responsibility or liability for [Decedent's mesothelioma] during the period of Shelby Williams' self-insurance." Both settlement agreements were approved by the Commission.

A deputy commissioner filed an opinion and order on 20 April 2023 denying Plaintiff's motion to add the Association as a defendant. Plaintiff appealed to the Full Commission. After a hearing, the Full Commission filed an opinion and award on 13 March 2024 denying Plaintiff's motion to add the Association as a defendant. Plaintiff appeals.

## II.    Discussion

Plaintiff argues that the Commission erred by denying its motion to add the Association as a party to this matter.

## A.  Standard of Review

This Court's review of an opinion and award of the Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660 (2008) (citation omitted). Evidence is to be viewed "in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference." *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 602 (2005) (citation omitted). "Findings of fact are conclusive on appeal when supported by competent evidence, despite evidence that would support

contrary findings, and conclusions of law are reviewed *de novo.*" *Id.* Under a de novo review, this Court "considers the matter anew and freely substitutes its own judgment for the agency's." *Sellers v. FMC Corp.*, 216 N.C. App. 134, 138 (2011) (cleaned up).

## B. The Workers' Compensation Act

Under the Workers' Compensation Act, in cases "where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable." N.C. Gen. Stat. § 97-57 (2023). The statutory phrase "last injuriously exposed" means "an exposure which proximately augmented the disease to any extent, however slight." *Penegar v. United Parcel Serv.*, 259 N.C. App. 308, 318 (2018) (citing *Rutledge v. Texas Corp.*, 308 N.C. 85, 89 (1983)).

The Act authorizes claims to be paid through settlement agreements executed between an employee and employer. N.C. Gen. Stat. § 97-17(a) (2023). A settlement agreement approved by the Commission "is as binding on the parties as an order, decision[,] or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal." *Pruitt v. Knight Pub. Co.*, 289 N.C. 254, 258 (1976) (citations omitted).

## C. Insuring Workers' Compensation Liability

An employer is primarily liable to its employees for the payment of benefits

under the Act, and this liability remains regardless of whether "the employer has the necessary insurance, is self-insured, or has no insurance at all." *Ryles v. Durham County Hosp. Corp.*, 107 N.C. App. 455, 461 (1992); N.C. Gen. Stat. § 97-95 (2023). Nevertheless, "[e]very employer is required to secure its obligations under the Act by either insuring its workers' compensation liability or self-insuring where it has the financial ability to pay for benefits." *Goodson*, 171 N.C. App. at 605; N.C. Gen. Stat. § 97-93 (2023).

To self-insure under the Act, the employer must apply for and receive a license from the Commissioner of Insurance. N.C. Gen. Stat. §§ 97-170, 97-165(4) (2023). "Only an applicant whose total fixed assets amount to five hundred thousand dollars ($500,000) or more may apply for a license." N.C. Gen. Stat. § 97-170(c). An employer applying for a license to self-insure must file its application both with the Commissioner of Insurance and the Association. N.C. Gen. Stat. § 97-170(b).

**D. The Association**

"All . . . self-insurers are required to be members of the [] Association as a condition of being licensed to self-insure by the Commissioner of Insurance." *Ketchie v. Fieldcrest Cannon, Inc.*, 243 N.C. App. 324, 327 (2015); N.C. Gen. Stat. § 97-131(b) (2023). The Association is not an insurance carrier. Rather, it is a "nonprofit unincorporated legal entity" created by statute to "provide mechanisms for the payment of covered claims against member self-insurers . . . to avoid financial loss to claimants because of the insolvency of a member self-insurer[.]" N.C. Gen. Stat. §

97-131(a) (2023). A self-insurer "shall be deemed to be a member of the Association for purposes of its own insolvency if it is a member when the compensable injury occurs." N.C. Gen. Stat. § 97-131(b)(2) (2023).

The Association incurs liability only for "covered claims" as defined by statute. *Id.* A "covered claim" is "an unpaid claim against an insolvent . . . self-insurer that relates to an injury that occurs while the . . . self-insurer is a member of the Association and that is compensable under [the Act]." N.C. Gen. Stat. § 97-130(4) (2023). Accordingly, the Association can be liable for a claim against one of its member self-insurers only when the following four requirements are met: (1) the self-insurer is insolvent; (2) the claim is unpaid; (3) the claim relates to an injury that occurred while the self-insurer was a member of the Association; and (4) the claim is otherwise compensable under the Act. *Id.*

**E. Analysis**

Here, the Commission concluded that the Association is not a proper party because Plaintiff's claim does not meet all four requirements of a covered claim. We agree.

At the outset, we note that the third and fourth requirements of a "covered claim" have been met. The parties stipulated that "Shelby Williams was a member self-insurer of the Association from 1 July 1989 to 30 June 1999" and that Plaintiff's "last date of employment with Shelby Williams and last alleged injurious exposure to asbestos were both in 1997 during the Shelby Williams period of self-insurance."

Therefore, Plaintiff's claim relates to an injury that occurred while Shelby Williams was a member of the Association. *See id.* Second, Decedent's injury—mesothelioma resulting from asbestos exposure—constitutes an occupational disease covered under the Act. *See* N.C. Gen. Stat. § 97-53(13) (2023); *Rutledge*, 308 N.C. at 93. The parties do not dispute that Plaintiff's claim is compensable under the Act. *See* N.C. Gen. Stat. § 97-130(4).

However, the remaining first two requirements—the member self-insurer is insolvent and the claim is unpaid—have not been met.

Shelby Williams was self-insured and a member of the Association on the date of Decedent's last injurious exposure to asbestos in 1997. Shelby Williams was acquired by Falcon in May 1999, and Falcon, including Shelby Williams, filed for bankruptcy in 2005. All Shelby Williams' pre-petition workers' compensation claims were paid, and the bankruptcy plan for reorganization made no provisions for the payment of claims against Shelby Williams that had been incurred but not yet reported. The bankruptcy court approved Falcon's plan for reorganization in October 2005, and Falcon officially changed its name to CFG in November 2005. Shelby Williams merged into CFG in December 2005, and CFG became the surviving entity. As the surviving entity, CFG is responsible for Shelby Williams' liabilities and obligations, including Plaintiff's claim relating to Decedent's asbestos exposure that was incurred when Shelby Williams was self-insured but was not reported until Decedent was diagnosed with mesothelioma in 2013. As Shelby Williams, the self-

insurer, is now CFG, and CFG is not insolvent, there is no "covered claim" for which the Association could be liable.

Furthermore, Plaintiff agreed to settle its claims against CFG for $3,000 for "the period of self-insurance by Shelby Williams for which [CFG] may be liable." The settlement agreement provides, in part:

> 11. There currently exists a dispute among [Plaintiff and CFG]:
>
>> a. Plaintiff contends that [CFG], for the period of Shelby Williams' period of self-insurance, is liable, in whole or in part, for []Decedent's mesothelioma and resulting death, entitling her to benefits under N.C. Gen. Stat. § 97-38.
>>
>> b. [CFG], on the other hand, disputes and denies any liability whatsoever. . . .
>>
>> c. [Plaintiff and CFG] agree that unless they are able to dispose of the matters and things in dispute in the case by agreement among themselves, hearings before the North Carolina Industrial Commission and subsequent appeals to the Full Commission and perhaps to the Court of Appeals will likely result and the matters will have to be decided as disputed claims.

The settlement agreement released CFG from any further liability resulting from "the period of Shelby Williams' self-insurance" from July 1989 through the end of Decedent's employment in 1997. This settlement agreement was approved by the Commission. As CFG had assumed liability for claims arising from Shelby Williams' period of self-insurance, and Plaintiff agreed to settle its claims against CFG for

$3,000, this claim is not unpaid. *See* N.C. Gen. Stat. § 97-17(a) (authorizing claims to be paid through settlement agreements); *see also Pruitt*, 289 N.C. at 258 (emphasizing that settlement agreements approved by the Commission are binding). Accordingly, as CFG is not insolvent, and Plaintiff's claim is not unpaid, there is no "covered claim" for which the Association could be liable.

Because there is no "covered claim" for which the Association could be liable, the Commission did not err by denying Plaintiff's motion to add the Association as a party.

**F. Plaintiff's Remaining Arguments**

Plaintiff argues that the Commission made other errors in its opinion and award. We address each in turn.

First, Plaintiff argues that the Commission erred by determining that "the date which establishes who is liable for this claim is when the claim arose in 2013 (the death of Decedent and the filing of the claim) as opposed to the last date of exposure." Plaintiff mischaracterizes the Commission's findings and conclusions.

The parties stipulated that Decedent's "last date of employment with Shelby Williams and last alleged injurious exposure to asbestos were both in 1997 during the Shelby Williams (sic) period of self-insurance." It is also undisputed that Decedent was not diagnosed with mesothelioma until 2013. The Commission's challenged findings and conclusions establish that Plaintiff's cause of action against Shelby Williams for Decedent's last injurious asbestos exposure in 1997 accrued in 2013, at

which point, CFG was responsible for claims related to Shelby William's period of self-insurance. Thus, the Commission did not erroneously determine "the date which establishes who is liable for this claim."

Plaintiff also argues that the Commission erred by using Delaware mergers and acquisitions law "to define the rights of the parties and whether the workers' compensation liabilities of Shelby Williams had transferred to Falcon and then CFG." Specifically, Plaintiff argues that questions arising from a workers' compensation claim should be governed solely by the Act, not mergers and acquisitions law. We disagree. Although the Act controls the adjudication of workers' compensation claims, the issue presented on appeal to this Court involves the effect that a corporate merger had on the liabilities of the entities involved.

Here, Shelby Williams merged with CFG in December 2005, and CFG is the surviving entity. Both Shelby Williams and CFG were created and incorporated pursuant to Delaware law. Under both North Carolina and Delaware law, all liabilities of each merged entity are retained in the surviving corporation. *See* N.C. Gen. Stat. § 55-11-06(a)(3) (2023); *see also Lee v. Scarborough*, 164 N.C. App. 357, 360-61 (2004) ("When a merger takes effect, the merging corporation ceases to exist; all assets and liabilities of the merging corporation are vested in the surviving corporation. . . .") (citation omitted); *see also* Del. Code Ann. tit. 8, § 259 (West 2023). Therefore, the Commission correctly concluded that as a result of the merger, Shelby Williams ceased to exist, and its' liabilities were retained in CFG.

Finally, Plaintiff argues that N.C. Gen. Stat. § 97-6 bars CFG from assuming Shelby Williams' workers' compensation liabilities. Specifically, Plaintiff contends that Shelby Williams' merger with CFG improperly constituted an agreement that intended to relieve Shelby Williams from its workers' compensation liabilities. Plaintiff's reliance on this provision is misguided.

N.C. Gen. Stat. § 97-6 provides, "No contract or agreement, written or implied, no rule, regulation, or other device shall in any manner operate to relieve an employer in whole or in part, of any obligation created by this Article, except as herein otherwise expressly provided." N.C. Gen. Stat. § 97-6 (2023). However, compromise settlement agreements approved by the Commission do not implicate this statute. *See* N.C. Gen. Stat. § 97-17; *see also Tellado v. Ti-Caro Corp.*, 119 N.C. App. 529, 533 (1995).

Here, the 2005 merger between Shelby Williams and CFG did not "operate to relieve" Shelby Williams of any liability; CFG's liability for claims related to Shelby William's period of self-insurance remained after the merger. The settlement agreement executed between Plaintiff and CFG relieved CFG of further liability. Therefore, the Commission was correct in concluding that N.C. Gen. Stat. § 97-6 does not apply to this matter.

### III.   Conclusion

Accordingly, for the reasons stated above, we affirm the Commission's opinion and award denying Plaintiff's motion to add the Association as a party.

AFFIRMED.

Judge WOOD concurs.

Judge HAMPSON dissents by separate opinion.

No. COA24-587 – *Cloer v. King Arthur, Inc.*

HAMPSON, Judge, dissenting.

The limited issue before this Court is not whether the Association should ultimately be held liable for the payment of benefits under Plaintiff's claim, but rather whether the Association is properly a party to this matter. In my view, the Full Commission erred in dismissing the Association as a party. The Opinion and Award should be reversed and this matter remanded for further proceedings. Therefore, I respectfully dissent.

The Record before us demonstrates Decedent's employer—Shelby Williams—was self-insured and a member of the Association during Decedent's employment and at the time of his alleged last exposure to asbestos in 1997, leading to his 2013 mesothelioma diagnosis and that Shelby Williams later became insolvent.[1] Shelby Williams made no payment on the claim prior to its insolvency and there is no evidence Falcon—which was not a self-insured employer—provided workers' compensation insurance to retroactively cover claims against Shelby Williams, or otherwise assumed any statutory liability for workers compensation benefits, upon acquiring Shelby Williams and prior to entering bankruptcy. As such, this claim meets all four requirements of a "covered claim" under the Act: (1) the self-insurer is

---

[1] By statute, a self-insured member of the Association becomes insolvent, *inter alia*, upon: "Institution of bankruptcy proceedings by or regarding the member self-insurer." N.C. Gen. Stat. § 97-135(2) (2023).

insolvent; (2) the claim is unpaid; (3) the claim relates to an injury that occurred while the self-insurer was a member of the Association; and (4) the claim is otherwise compensable under the Act. *See* N.C. Gen. Stat. § 97-130(4) (2023). Thus, the Association has the statutory obligation to: "Investigate claims brought against the Association and adjust, compromise, settle, and pay covered claims to the extent of the Association's obligation[.]" N.C. Gen. Stat. § 97-133(a)(7) (2023). This should be where the analysis ends and this matter should move forward with the Association as a party to determine the extent, if any, of the Association's liability for this claim.

However, the Full Commission also erred in concluding Plaintiff's settlement with CFG forecloses any claim against the Association. It is apparent from the face of the settlement agreement—approved by the Commission—that Plaintiff was not discharging any potential liability of the Association.[2] Indeed, it was CFG's position that the Falcon/Shelby Williams bankruptcy discharged liability for the claim. It is evident from the face of the settlement agreement this was a disputed claim, CFG did

---

[2] Likewise, Plaintiff's earlier settlement with The Hartford Insurance Company—also approved by the Commission provided:

> A dispute has arisen concerning the alleged self-insured period for Shelby Williams Industries, Inc. Commercial Furniture Group ("CF Group") and the North Carolina Self-Insurance Security Association ("NCSISA") have both been added as party-Defendants to this claim for the period during which Shelby Williams was allegedly self-insured. CF Group and NCSISA are not parties to this Agreement, and Plaintiff maintains her right to pursue this claim against only CF Group and NCSISA for their alleged responsibility for Shelby Williams' period of self-insurance.

not accept compensability of the claim, and was simply resolving the claim only to the

extent it had any exposure. The settlement agreement provided:

> 12. The North Carolina Self-Insurance Security Association is not a party to this Agreement, and Plaintiff reserves her right to pursue these claims against the North Carolina Self-Insurance Security Association as a result. Additionally, the Agreement also does not resolve and is not a release of any claim Plaintiff may have against insurance policies, bonds, trusts, or other sum of earmarked funds, not in the control of, administered by, or otherwise held by Employer-Defendant or Shelby Williams during the period of its self-insurance, which may be available to pay this claim.
> . . . .
>
> 14. The Parties acknowledge and agree that this Agreement does not contain any findings or stipulations with respect to insurance coverage or self-insurance for any other Employer-Defendant and shall not be used as evidence of coverage in these claims or any future claim, proceeding, or dispute. The Parties further acknowledge and agree that this Agreement is intended to include only the period of self-insurance by Shelby Williams for which Employer-Defendant may be liable. This Agreement fully releases Employer-Defendant, and all of its subsidiaries or other legal entities, from any and all future responsibility or liability for the alleged occupational injury, disease, and/or condition that gave rise to the claims to which this Agreement pertains during the period of Shelby Williams' self-insurance.

The subsequent Consent Order dismissing CFG from the action also makes

clear both CFG's position and the fact neither the parties to the agreement nor the

Commission itself believed the settlement with CFG resolved the potential liability

of the Association. The Consent Order entered by the Commission provides: "Further,

there is a significant issue over whether Employer-Defendant could have any responsibility for Plaintiff's claims given Shelby Williams' bankruptcy and rebranding, with other entities, as Employer-Defendant." It goes on to state:

> The Parties to this Consent Order acknowledge that Plaintiff still maintains her right to pursue these claims against the North Carolina Self-Insurance Security Association for its alleged responsibility for Shelby Williams' period of self-insurance. The Parties' compromised agreement does not serve to resolve any of the issues between Employee-Decedent and the North Carolina Self-Insurance Security Association. Further, the Parties' Agreement does not resolve and is not a release of any claim Plaintiff may have against insurance policies, bonds, trusts, or other sum of earmarked funds, not in the control of, administered by, or otherwise held by Employer-Defendant or Shelby Williams during the period of its self-insurance, which may be available to pay the death claim.

"A 'clincher' or compromise agreement is a form of voluntary settlement recognized by the Commission and used to finally resolve contested or disputed workers' compensation cases." *Chaisson v. Simpson*, 195 N.C. App. 463, 474, 673 S.E.2d 149, 158 (2009) (citation and quotation marks omitted)). "It is well established that '[c]ompromise agreements are governed by the legal principles applicable to contracts generally.'" *Malloy v. Davis Mech., Inc.*, 217 N.C. App. 549, 553, 720 S.E.2d 739, 742 (2011) (quoting *Dixie Lines v. Grannick*, 238 N.C. 552, 556, 78 S.E.2d 410, 414 (1953)). "The scope and extent of the release should be governed by the intention of the parties, which must be determined by reference to the language, subject matter and purpose of the release." *Chemimetals Processing, Inc. v. Schrimsher*, 140 N.C.

App. 135, 138, 535 S.E.2d 594, 596 (2000). Settlement agreements in the Industrial Commission carry an additional requirement: "Pursuant to N.C. Gen. Stat. § 97–17(a) and Rule 502, all settlement agreements must be approved by the Commission. The Commission must undertake a "full investigation" to determine that a settlement agreement "is fair and just [.]" *Malloy* at 553, 720 S.E.2d at 742 (citations omitted).

Here, the express language of the settlement agreement with CFG expressly limits the scope of its release. There is a clear dispute—left unresolved by the Industrial Commission—as to whether the Shelby Williams/Falcon bankruptcy discharged any liability by CFG for Plaintiff's claim.[3] Moreover, there is a dispute as to which of either CFG or the Association, or both, is liable for Plaintiff's claim following Shelby Williams insolvency upon filing for bankruptcy and its subsequent re-organization as part of CFG. The settlement agreement resolved the potential claim against CFG—and specifically is a lump sum payment not tied to any death benefit—and the Commission expressly approved the agreement allowing Plaintiff to pursue claims against the Association.

Thus, the Association is properly a party to Plaintiff's claim for death benefits. Therefore, the Commission erred by dismissing Plaintiff's claim against the

---

[3] If the claim was discharged in bankruptcy, then CFG is not responsible for the claim. Any discharge of the claim in bankruptcy would not have any impact on the Association's statutory duty triggered by Shelby Williams filing for bankruptcy to "Investigate claims brought against the Association and adjust, compromise, settle, and pay covered claims to the extent of the Association's obligation[.]" N.C. Gen. Stat. § 97-133(a)(7).

Association.  Consequently, the Opinion and Award should be reversed and remanded to the Commission for further proceedings to establish the Association's liability, if any, for Plaintiff's claim.