JAMES GOODSON, Employee-Plaintiff and N.C. DEPARTMENT OF INSURANCE, ex rel. JAMES LONG, Commissioner, Intervenor v. P. H. GLATFELTER CO., Employer-Defendant; LANGDON M. COOPER, Trustee in Bankruptcy for RFS ECUSTA, INC., Defendant and NORTH CAROLINA SELF-INSURANCE GUARANTY ASSOCIATION, Defendant

No. COA04-886

(Filed 19 July 2005)

## 1. Workers' Compensation— sale of business—continuing jurisdiction of Industrial Commission

An employer who had sold its paper mill and workers' compensation liabilities after an employee's work-related accident continued to be subject to the jurisdiction of the Industrial Commission with regard to that accident.

## 2. Workers' Compensation— jurisdiction of Industrial Commission—not divested by course of conduct

None of the cited authority supported an argument that a course of conduct by the Department of Insurance or the Industrial Commission could divest the Commission of the jurisdiction conferred on it by statute in a workers' compensation case involving an employer that had sold its business. Moreover, the parties had stipulated that the employer, Glatfelter, was bound by the provisions of the Workers' Compensation Act.

## 3. Workers' Compensation— authority of Industrial Commission—agreement transferring obligations

Adjudication of the validity of an agreement transferring workers' compensation liabilities along with a paper mill fell within the delegated authority of the Industrial Commission. N.C.G.S. § 97-6.

**4. Workers' Compensation— authority of Industrial Commission—discharge of obligation**

Determining whether a self-insurer has fully discharged its workers' compensation obligations is the province of the Industrial Commission; the Department of Insurance does not have that authority, by implication or expression. The Department of Insurance in this case improperly released the bond of a self-insured employer which did not secure its obligations in a manner compliant with N.C.G.S. § 97-185(g).

**5. Appeal and Error— assignment of error—not supported by authority—abandoned**

An assignment of error was deemed abandoned for failure to cite legal authority.

**6. Workers' Compensation— transfer of obligation—estoppel**

Assuming that estoppel could be asserted against the Industrial Commission in a case involving the attempted transfer of workers' compensation liabilities, the actions necessary for the transfer occurred before the Commission was informed or involved.

**7. Workers' Compensation— transferred liability—enforcement of award—authority of Commission versus Department of Insurance**

Although defendant argued that the Department of Insurance had exclusive regulatory jurisdiction, the Industrial Commission properly exercised its authority in determining that a self-insured employer who attempted to transfer its workers' compensation liabilities along with its paper mill remained subject to the Workers' Compensation Act.

**8. Workers' Compensation— necessary parties—sale of business and obligations**

All of the necessary parties were before the Industrial Commission in a workers' compensation case arising from the sale of a paper mill and its liabilities.

**9. Workers' Compensation— sale of business—transfer of obligations—no statutory provisions**

Although N.C.G.S. § 97-6 allows employers to use devices to relieve themselves of workers' compensation obligations where "otherwise expressly provided" in the Workers' Compensation

Act, there are no such mechanisms allowing the transfer under the facts of this case.

## 10. Workers' Compensation— levy on deposits—allowed but not required

Although N.C.G.S. § 97-185(f) endorses a levy upon applicable deposits by claimants entitled to workers' compensation benefits, nothing in the statute indicates that a claimant must levy on the deposit or that the Commission has the authority to force a claimant to do so.

## 11. Workers' Compensation— unsuccessful transfer of obligation—order to retain certificate of deposit—erroneous

The Industrial Commission erred by ordering the Department of Insurance to retain a certificate of deposit belonging to defendant RFS where it had determined that RFS was not responsible for Glatfelter's workers' compensation obligations.

Appeal by P. H. Glatfelter Co. and Langdon M. Cooper, trustee in bankruptcy for RFS Ecusta, Inc. from order entered 12 February 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 2 March 2005.

*Neill S. Fuleihan and Timothy L. Finger, for employee-plaintiff.*

*Young, Moore, and Henderson, P.A., by Robert C. Paschal, John N. Fountain, and Michael W. Ballance, for employer-defendant.*

*Stuart Law Firm, P.L.L.C., by Catherine R. Stuart and Charles C. Kyles, for the North Carolina Self-Insurance Guaranty Association.*

*Mullen, Holland, & Cooper, P.A., by Langdon M. Cooper, Jesse V. Bone, Jr., Jason R. Shoemaker, and Nancy B. Paschall, for Langdon M. Cooper, Trustee in Bankruptcy for RFS Ecusta, Inc.*

*Attorney General Roy Cooper, by Assistant Attorney General E. Clementine Peterson, for intervenor North Carolina Department of Insurance.*

CALABRIA, Judge.

P. H. Glatfelter Co. ("Glatfelter") appeals an opinion and award entered by the North Carolina Industrial Commission ("Commission"), in which the Commission found James Goodson ("plaintiff")

was entitled to have Glatfelter pay his workers' compensation claim and ordered Glatfelter to (1) pay compensation to plaintiff pending appeal and (2) secure its obligations under the Workers' Compensation Act by either re-qualifying as a self-insurer or posting an appropriate special release bond. We affirm in part and reverse in part.

From 24 June 1987 until 9 August 2001, Glatfelter operated a paper mill, known as the Ecusta Division, where plaintiff was employed. On 17 January 1992, the North Carolina Department of Insurance ("DOI") licensed Glatfelter to self-insure its workers' compensation liabilities, and Glatfelter posted a commercial surety bond issued by Travelers Casualty and Surety Company of America to satisfy certain statutory bond requirements. The bond was originally for $500,000.00 but was increased to $1.6 million as liabilities grew. Glatfelter remained self-insured until 24 August 2001 and was a member of the North Carolina Self-Insurance Guaranty Association ("SIGA"), a statutorily created legal entity created to pay "covered claims" against insolvent member self-insurers. During this period of time, plaintiff sustained a compensable injury by accident and began receiving temporary total disability compensation.

In 2001, Donald Bowman ("Bowman"), Corporate Insurance and Credit Manager for Glatfelter, became aware of efforts by Glatfelter to sell the Ecusta Division, including its liabilities. On 18 June 2001, Bowman wrote Ronald Ennis ("Ennis"), senior financial analyst responsible for supervising the self-insured workers' compensation unit with DOI. In the letter, Bowman explained that Glatfelter was "in the process of selling its Ecusta Division along with the Workers Compensation liabilities[,] . . . no longer want[ed] or need[ed] to be Self-Insured[,] . . . and [desired] to cancel the [existing] Surety Bond[.]" Bowman requested information on "exactly what . . . is needed from [Glatfelter in order] to withdraw from being Self-Insured."

Three days later, Ennis responded to Bowman's letter "notifying [DOI] of [Glatfelter's] voluntary termination of self-insured status . . . effective 24 August 2001." Ennis' letter noted that the Ecusta Division was "being acquired by a third party that is assuming all past workers' compensation liabilities accrued during the Company's operation of the division." Ennis informed Bowman that the surety bond could be cancelled "by giving the Commissioner 60 days written notice" but warned that the surety would "remain liable for all obligations and liabilities . . . that arose under Chapter 97 of the North Carolina General Statutes." Nonetheless, Ennis went on to

state that if "the acquiring company provides a replacement bond, then the Department will release the Surety Company of any past, present or future liabilities."

In August 2001, Glatfelter entered into a written acquisition agreement with, *inter alia*, RFS Ecusta, Inc. ("RFS") for the sale of the Ecusta Division. The acquisition agreement purportedly transferred certain liabilities, including workers' compensation claims, of the Ecusta Division. RFS deposited a $1.6 million certificate of deposit with DOI, and, on 24 August 2001, Ennis wrote Bowman and informed him that DOI had received confirmation that RFS deposited $1.6 million "to secure the assumption of liabilities of [Glatfelter's] worker's compensation reserve loss claims" thus purportedly "discharg[ing] . . . all past, present, existing and potential liability for [Glatfelter's surety company]." Ennis also noted that Glatfelter had voluntarily terminated their status as a self-insured employer in North Carolina. DOI released Glatfelter's bond. In a subsequent memorandum regarding self-insured corporations, Ennis noted Glatfelter sold the Ecusta Division to RFS, who assumed all liabilities and posted a $1.6 million certificate of deposit as a "dollar for dollar exchange with [Glatfelter's] surety bond [and Glatfelter's] surety bond company was granted a full release from liability." A second memorandum by Ennis the following month added that DOI "notified the Industrial Commission of the transfer of the loss claims to [RFS] to ensure the appropriate legal responsibility for their discharge."

As noted previously, RFS assumed control of the operations of the Ecusta Division. Besides the certificate of deposit with DOI, RFS was insured at all times from 8 August 2002 to 23 September 2003 for claims arising during that period but not for prior pending claims. DOI did not require RFS to become self-insured when it posted the bond. In October 2002, RFS filed petitions in bankruptcy. RFS made no payments for plaintiff's admittedly compensable claim after 30 September 2002 yet failed to follow statutory procedures to terminate compensation.

Glatfelter and SIGA denied liability for payments on plaintiff's claim. North Carolina Chief Deputy Commissioner Stephen Gheen initiated a proceeding *ex mero motu* concerning continued payments of workers' compensation benefits from RFS and/or Glatfelter, and in an order entered 3 December 2002, the deputy commissioner added Glatfelter, SIGA, and DOI as parties. After a hearing on the matter and completion of the record, Deputy Commissioner George R. Hall, III,

entered an opinion and award providing, in relevant part, as follows: (1) there were no additional necessary parties; (2) the acquisition agreement did not effectuate a valid transfer of Glatfelter's workers' compensation liabilities to RFS by virtue of N.C. Gen. Stat. § 97-6 (2003) and the lack of a statutory scheme permitting a self-insured employer to transfer liabilities for workers' compensation claims by private contractual agreement; (3) Glatfelter, as plaintiff's self-insured employer at the time of the injury, was responsible for paying the compensable claim; (4) DOI erroneously released Glatfelter's bond because no "special release bond" as required by N.C. Gen. Stat. § 97-185(g) (2003) had been posted and Glatfelter had not fully discharged its obligations under the Workers' Compensation Act; (5) the certificate of deposit posted by RFS did not qualify as a "special release bond" because RFS was not a corporate surety as defined by N.C. Gen. Stat. § 97-165(5) (2003); and (6) SIGA's liability was not at issue since RFS' certificate of deposit was not implicated.

The Commission affirmed the opinion and award on appeal but modified certain provisions, in relevant part, as follows: (1) the agreements between Glatfelter and RFS, to the extent they purported to transfer workers' compensation liabilities, were void *ab initio* as a matter of law and public policy; (2) Glatfelter negotiated its workers' compensation liabilities into the sales price of the Ecusta Division, and the purpose of the certificate of deposit posted by RFS was "to secure . . . the self-insurer's claims liability to insure that injured workers' injuries on the job will be properly compensated, irrespective of the employer's financial condition"; and (3) Glatfelter erroneously relied on the posting of the certificate of deposit by RFS to bring Glatfelter into compliance with the "special release bond" provisions. In its award, the Commission ordered the use of the certificate of deposit posted by RFS based on the purpose stated in the award and opinion. The Commission further ordered Glatfelter to secure its obligations under the Act by either re-qualifying as a self-insurer or posting an appropriate special release bond as well as to make appropriate workers' compensation payments to plaintiff. Finally, the Commission ordered Glatfelter to pay compensation to plaintiff pending appeal pursuant to N.C. Gen. Stat. § 97-86.1 (2003) and dismissed SIGA as a party in the action. Both Glatfelter and RFS gave notice of appeal to this Court.

I. Standard of Review

Our Supreme Court has recently re-iterated that the Workers' Compensation Act is designed " 'to provide compensation for injured

employees' "; therefore, its provisions should be " 'liberally construed' " and " 'its benefits should not be denied by a technical, narrow, and strict construction.' " *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (quoting *Hollman v. City of Raleigh*, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968)). In reviewing an opinion and award by the Commission, we must determine "whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). We view the evidence in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Findings of fact are conclusive on appeal when supported by competent evidence, despite evidence that would support contrary findings, and conclusions of law are reviewed *de novo*. *McRae*, 358 N.C. at 496, 597 S.E.2d at 700-01 (citations omitted). As to the Commission's findings of jurisdictional fact, such findings "are *not* conclusive on appeal, even if supported by competent evidence[,]" and the reviewing court has a duty to make independent findings of jurisdiction considering all the evidence of record. *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000).

II. Jurisdiction

[1] In the first assignment of error, Glatfelter asserts the Commission "lack[ed] the jurisdiction to address the issue [presented] because Glatfelter is not an 'employer' subject to the Workers' Compensation Act." Specifically, Glatfelter argues that, following RFS' purchase of Ecusta, Glatfelter was not an employer as defined by N.C. Gen. Stat. § 97-2(3) (2003) and was not subject to the jurisdiction of the Commission. However, the subsequent sale of the Ecusta Division to RFS does not, standing alone, divest the Commission of jurisdiction over Glatfelter as plaintiff's employer at the time of the accident. *See Lucas v. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976) (noting that the Commission's jurisdiction over issues of compensation under the Act depends on whether there existed, "at the time of the accident[,]" an employer-employee relationship between the claimant and the party from whom compensation is sought). The parties stipulated that this relationship existed between plaintiff and Glatfelter on 23 May 1999, the date of the accident. This assignment of error is overruled.

III. Validity of Transfer of Liabilities

A. Jurisdiction over Glatfelter

[2] In the first argument contained in Glatfelter's second assignment of error, Glatfelter, citing (1) its inquiries and dealings with DOI in selling the Ecusta Division, (2) the subsequent notification to the Commission, and (3) RFS' payment of plaintiff's compensation benefits after the sale, asserts that "[u]nder such circumstances, the combined actions of [DOI] and the [Commission] served to strip the [Commission] of jurisdiction over Glatfelter in this matter, and Glatfelter should be dismissed." In support of this argument, Glatfelter cites *Bryant v. Dougherty*, 267 N.C. 545, 148 S.E.2d 548 (1966); N.C. Gen. Stat. § 97-185(g) and (h); and N.C. Gen. Stat. § 58-2-1.

North Carolina General Statutes § 58-2-1 statutorily creates DOI and charges it "with the execution of laws relating to insurance and other subjects placed under [it]." Our Supreme Court's holding in *Bryant* merely concerned whether an employee could bring a malpractice claim against physicians who treat an employee's compensable injury and whether the Commission had "jurisdiction to hear and determine such action." *Bryant*, 267 N.C. at 552, 148 S.E.2d at 554. North Carolina General Statutes § 97-185 contains, in relevant part, certain provisions concerning how DOI is to handle securities of self-insured employers. The instant case does not concern a plaintiff attempting to bring suit against his physician for alleged malpractice, and none of the above cited authority supports an argument that a course of conduct by DOI or the Commission somehow divests the Commission of jurisdiction. Moreover, we have found no support for the proposition that a course of action by DOI or the Commission could divest it of the jurisdiction which has been conferred upon it by statute. In any event, Glatfelter's objections to the Commission's jurisdiction over it conflict with the pre-trial agreement entered into, *inter alios*, by Glatfelter. The pre-trial agreement provided that Glatfelter agreed to certain stipulations from which the Commission could make findings of fact and conclusions of law. Included in such stipulations was that Glatfelter was subject to and bound by the applicable provisions of the Act. This assignment of error is overruled.

B. Jurisdiction over Adjudication of the Validity of the Agreement

[3] Glatfelter alternatively argues that, even if the Commission had jurisdiction over Glatfelter, it did not have jurisdiction to adjudicate

the validity of the terms of the acquisition agreement purporting to transfer the workers' compensation liability for the the Ecusta Division from Glatfelter to RFS. Citing *TIG Ins. Co. v. Deaton, Inc.*, 932 F. Supp. 132 (W.D.N.C. 1996), Glatfelter contends the agreement was a discreet contract over which the Commission had no jurisdiction. We disagree.

The Commission is expressly vested with jurisdiction to determine "[a]ll questions arising under" the Workers' Compensation Act, *see* N.C. Gen. Stat. § 97-91 (2003), and "is charged with the duty of administering provisions of the Act such as to provide speedy, substantial and complete relief to all parties bound by the Act." *N.C. Ins. Guar. Ass'n v. International Paper Co.*, 152 N.C. App. 224, 226, 569 S.E.2d 285, 286 (2002). The jurisdiction conferred by statute to the Commission also includes "such judicial power as is necessary to administer the Workers' Compensation Act." *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 138, 337 S.E.2d 477, 483 (1985), *appeal after remand*, 94 N.C. App. 640, 381 S.E.2d 151 (1989), *reversed on other grounds*, 326 N.C. 476, 390 S.E.2d 136 (1990).

In the instant case, the Commission considered the acquisition agreement to determine whether Glatfelter could validly transfer its workers' compensation liabilities under the Act to RFS. North Carolina General Statutes § 97-6 (2003) provides as follows: "No contract or agreement, written or implied, no rule, regulation, or other device shall in any manner operate to relieve an employer in whole or in part, of any obligation created by this Article, except as herein otherwise expressly provided." We conclude that the portion of the contract that attempted to transfer the workers' compensation liabilities of Glatfelter to RFS was the type of device contemplated by N.C. Gen. Stat. § 97-6 such that adjudication of the validity of that device fell within the scope of the Commission's delegated authority under N.C. Gen. Stat. § 97-91.

Nor is our conclusion affected by the reasoning in *TIG*, which involved a dispute between an insurance company that provided workers' compensation coverage and an insurance company that provided excess workers' compensation coverage. *TIG*, 932 F.Supp. at 135. Neither *TIG* nor *Clark v. Ice Cream Co.*, 261 N.C. 234, 134 S.E.2d 354 (1964), upon which the *TIG* opinion relied, implicated the operation of N.C. Gen. Stat. § 97-6 but, rather, concerned whether coverage ever arose under the terms of the contract for excess workers' compensation insurance. This assignment of error is overruled.

IV. Purported Transfer of Liabilities

[4] Having determined the Commission had jurisdiction to make a determination with respect to the validity of the purported transfer of liabilities by Glatfelter to RFS, we now turn to whether the Commission properly decided the question. The Commission concluded that "to the extent the agreements purported to transfer Glatfelter's workers' compensation liabilities" under the Act, the agreement violated N.C. Gen. Stat. § 97-6 and was void *ab initio*. As this issue concerns statutory interpretation of the Act, it is a question of law we review *de novo*.

We have previously stated that an employer is "primarily liable to an employee for a workers' compensation award" and " 'must pay benefits to its employees, whether the employer has the necessary insurance, is self-insured, or has no insurance at all.' " *Tucker v. Workable Company*, 129 N.C. App. 695, 700, 501 S.E.2d 360, 364 (1998) (quoting *Ryles v. Durham County Hospital Corp.*, 107 N.C. App. 455, 461, 420 S.E.2d 487, 491 (1992)). Every employer is required to secure its obligations under the Act by either insuring its workers' compensation liability or self-insuring where it has the financial ability to pay for benefits. N.C. Gen. Stat. § 97-93 (2003). Noticeably absent in the Act, however, is a provision allowing one employer to effectively escape any obligation under the Act by transferring *en toto* all of its obligations to another employer by contract or otherwise. Moreover, we agree with the Commission that any attempt to do so would conflict with the plain language of N.C. Gen. Stat. § 97-6 as an attempt to "relieve an employer [by contract] . . . of an[] obligation created" by the Workers' Compensation Act.

This does not mean, of course, that an employer is precluded from selling a division of a company to another. In such circumstances, the selling employer remains primarily liable for any workers' compensation liability arising during the time of ownership, and the selling employer is free to recover the costs associated with securing that liability in the purchase price of the division. Moreover, a selling employer may freely cease to self-insure if it complies with the following mandatory provision of N.C. Gen. Stat. § 97-185(g) (2003):

> If a self-insurer ceases to self-insure . . . the self-insurer shall notify the Commissioner [of Insurance], and may recover all or a portion of the securities deposited with the Commissioner [of Insurance] upon posting instead an acceptable special release

bond issued by a corporate surety in an amount equal to the total value of the securities. The special release bond shall cover all existing liabilities under the Act plus an amount to cover future loss development and shall remain in force until all obligations under the Act have been discharged fully.

Subsection (h) prohibits release of a self-insurer's deposits by the Commissioner upon cessation of self-insurance "until the self-insurer has discharged fully all the self-insurer's obligations under the Act."

As noted *supra*, the Commission determines an employer's liability under the Act by virtue of N.C. Gen. Stat. § 97-91. While we agree that DOI has the authority to administer and govern self-insurers' methods of *securing their liabilities* under the Workers' Compensation Act, nothing in the statutory scheme grants DOI the Commission's authority to determine *what those liabilities are*. In short, subsections (g) and (h) of N.C. Gen. Stat. § 97-185 do not, either by implication or expression, allow DOI to make determinations regarding whether a self-insurer has fully discharged its workers' compensation obligations. That determination has been, and remains, the province of the Commission.

It is undisputed that no special release bond was posted by Glatfelter. Additionally, RFS' certificate of deposit cannot be considered a special release bond because RFS is not a "corporate surety." *See* N.C. Gen. Stat. § 97-165(5) (2003) (defining a corporate surety as "an insurance company authorized by the Commissioner to write surety business" in North Carolina); N.C. Gen. Stat. § 97-185(g). Accordingly, DOI improperly released Glatfelter's bond under N.C. Gen. Stat. § 97-185(h) since Glatfelter had not secured its obligations under the Act in a manner compliant with N.C. Gen. Stat. § 97-185(g).

V. Ratification

**[5]** Glatfelter asserts the actions of DOI and the Commission after the purported assignment of liability to RFS ratified the acquisition agreement. Glatfelter fails to cite any legal authority or even a legal definition of the term ratification in its brief to this Court. It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein. This assignment of error is deemed abandoned by virtue of N.C. R. App. P. 28(b)(6) (2005).

GOODSON v. P.H. GLATFELTER CO.

[171 N.C. App. 596 (2005)]

VI. Estoppel

[6] In its next argument, Glatfelter "emphatically contends that both [DOI] and the [Commission] are estopped from entering any order that requires Glatfelter to fund the workers' compensation claim[] at issue . . . ." No order of DOI enforcing Glatfelter's liability to plaintiff under the Act is contained in the record or pending before this Court; therefore, we need not address any argument concerning whether DOI is estopped in the instant case. Moreover, Glatfelter cannot assert estoppel against the Commission.

The common law doctrine of equitable estoppel serves "to aid the law in the administration of justice when without its intervention injustice would result[,]" *see Thompson v. Soles*, 299 N.C. 484, 486, 263 S.E.2d 599, 602 (1980), and prevents one from asserting a right otherwise available to him against another if his own conduct would render such an assertion of that right against the other unfair. *LSB Fin. Servs., Inc. v. Harrison*, 144 N.C. App. 542, 548, 548 S.E.2d 574, 579 (2001). "Equitable estoppel is established by evidence that an individual . . . induces another to believe that certain facts exist and that other person rightfully relies on those facts to his detriment." *Bunn Lake Prop. Owner's Ass'n v. Setzer*, 149 N.C. App. 289, 297, 560 S.E.2d 576, 582 (2002) (citations and internal quotation marks omitted).

Assuming *arguendo* that Glatfelter could otherwise use the doctrine of estoppel to preclude the Commission from carrying out its duties under the Act, the actions necessary to effectuate the intended transfer of liabilities occurred before the Commission was involved in this action in any way or was even informed that the transfer was being attempted. Notably, no action by the Commission occurred until after the attempted transfer was complete. Accordingly, Glatfelter cannot, under these facts, show any action on the part of the Commission inducing Glatfelter to undertake the attempted transfer. Our research reveals no analogous application of the doctrine, nor are we persuaded the doctrine operates under these facts. This assignment of error is overruled.

VII. N.C. Gen. Stat. § 97-93

[7] Glatfelter next asserts the Commission erred in ordering it to "secure its obligations under the Workers' Compensation Act as required by N.C. Gen. Stat. § 97-93" because "self-insured employers are regulated exclusively by the Commissioner of Insurance" and the

Commission has no "jurisdiction to require Glatfelter to secure any obligations that the [Commission] finds to exist." Under N.C. Gen. Stat. § 97-94, employers bound by the compensation provisions of the Act are required to file with the Commission, as opposed to DOI, evidence of compliance with N.C. Gen. Stat. § 97-93 as often as deemed necessary by the Commission. The statute goes on to expressly grant the Commission, as opposed to DOI, the authority to penalize any employer "who refuses or neglects to secure such compensation . . . ." N.C. Gen. Stat. § 97-94. Moreover, once the Commission determined Glatfelter remained liable to plaintiff after the failed attempt to transfer its liability to RFS, it had the authority to order Glatfelter to take steps to secure that liability in a manner consistent with the Act and to impose penalties on Glatfelter for failure to do so. We hold the Commission properly exercised its authority in determining Glatfelter was an employer subject to the Act, and Glatfelter must secure its obligation to plaintiff by one of the permitted statutory methods in order to accomplish the opinion and award. This assignment of error is overruled.

VIII. Necessary Parties

[8] In its next assignment of error, Glatfelter asserts the Commission erred in determining no other parties were necessary to the action on the grounds that the acquisition agreement listed additional purchasing parties who were to be assuming Glatfelter's workers' compensation obligations. In the pre-trial agreement, one of the stipulated facts reads as follows: "On August 9, 2001, Glatfelter and [RFS] executed an Assumption Agreement, whereby RFS purported to assume the self-insured workers' compensation liabilities of certain Glatfelter employees, including [plaintiff]." There is no error in relying on the parties' stipulation that the assumption of Glatfelter's workers' compensation obligations to plaintiff was by RFS. Therefore, all necessary parties were before the Commission, and this assignment of error is overruled.

IX. Statutory Mechanism for Transfer of Liabilities

[9] Glatfelter asserts, in its next assignment of error, that the Act does permit the attempted transfer of liabilities. Specifically, Glatfelter contends N.C. Gen. Stat. §§ 97-6, 97-185 and 97-51 (2003), "when read together, provide a logical and effective mechanism for the release and discharge of Glatfelter's liability" for plaintiff's claim. Glatfelter directs the attention of this Court to the last portion of N.C. Gen. Stat. § 97-6, which allows employers to use devices to relieve

themselves of workers' compensation obligations where "otherwise expressly provided" in the Act.

Glatfelter's citation to the other two aforementioned provisions as expressly providing for the transfer contemplated in the instant case cannot be sustained. North Carolina General Statutes § 97-51 concerns liabilities between joint employers of an injured employee. It has no application in the instant case as Glatfelter and RFS were never joint employers of plaintiff. Glatfelter's reliance on subsections (g) and (h) of N.C. Gen. Stat. § 97-185 harken back to arguments already rejected herein and are likewise unavailing. There are no "expressly provided" mechanisms satisfying the requirements of N.C. Gen. Stat. § 97-91 that sanction Glatfelter's attempt to transfer its obligations to RFS under the facts of the instant case, and this assignment of error is overruled.

X. N.C. Gen. Stat. § 97-185(f)

[10] In its last assignment of error, Glatfelter asserts the Commission erred in failing to order plaintiff to levy upon RFS' certificate of deposit under N.C. Gen. Stat. § 97-185(f) (2003), which provides as follows: "No judgment creditor, other than a claimant entitled to benefits under the Act, may levy upon any deposits made under this section." While subsection (f) endorses levying on applicable deposits by claimants entitled to benefits under the Act, nothing in the provision indicates that a claimant must levy on such a deposit or that the Commission has the authority to force a claimant to do so. Moreover, Glatfelter's assertion is premised on the incorrect supposition that, upon "[l]evying on RFS' certificate of deposit[,] . . . [l]iability would fall upon the appropriate entity, and other claimants could avail themselves of this remedy." However, as our holding makes clear, Glatfelter and not RFS is the employer that is liable to plaintiff. For these reasons, we overrule this assignment of error.

XI. Appeal by RFS

[11] RFS appeals that portion of the Commission's opinion and award that reads as follows: "Since the purpose of the surety bond was to insure Glatfelter's workers' compensation obligations, the bond monies should be available for that purpose and therefore the parties shall immediately take the necessary steps to effectuate the underlying purpose for which the bond was issued."[1] RFS asserts the certificate of deposit cannot be retained by DOI "to 'in-

---

1. RFS actually posted a certificate of deposit as opposed to a bond.

'sure' obligations that the Full Commission held could not be transferred by Glatfelter ʰand remained the sole responsibility of Glatfelter." We agree.

The Commission determined that RFS was not liable for Glatfelter's workers' compensation obligations as a result of the attempted transfer. Having determined the issue of liability, the method of handling the certificate of deposit belonging to RFS, when it had no obligations under the Act, falls within the ambit of DOI's jurisdiction. Accordingly, we reverse that portion of the opinion and award of the Commission ordering DOI to retain RFS' certificate of deposit.

Affirmed in part and reversed in part.

Judges HUNTER and JACKSON concur.