***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan, and the briefs and oral arguments before the Full Commission. Upon review of all of the competent evidence of record and finding no good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives in this matter, the Full Commission AFFIRMS Deputy Commissioner Donovan's Opinion and Award of compensatory and medical compensation benefits and with some modifications thereto enters the following Opinion and Award:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into the evidentiary record by the parties at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission and the Industrial Commission has subject matter and personal jurisdiction over the parties.
2. On 19 February, 2001, Plaintiff sustained an admittedly compensable injury by accident to his back as manifested by North Carolina Industrial Commission Form 60 dated 16 June 2001.
3. On 19 February 2001, Defendant-Employer was a qualified self-insured with PMA Insurance Group serving as third party administrator.
4. On said occasion, plaintiff's average weekly wage was $917.77, resulting in a compensation rate of $611.88 per week as manifested by a Form 22 dated 28 June 2002.
5. As a result of his compensable injury, plaintiff received $493.98 per week in temporary total disability compensation from 10 March 2001 to 9 September 2001 and from 7 October 2001 to 8 April 2002, as manifested by NCIC Form 60 dated 16 June 2001, Form 28U dated 7 October 2001, and Form 62 dated 7 November 2001.
6. The issues for determination are:
 a. Whether the jobs that plaintiff was provided post-injury at his employment with defendant-employer constituted suitable employment under the Act and so represented plaintiff's post-injury wage earning capacity?
 b. Whether plaintiff remains temporarily totally disabled as a result of his 19 February 2001 admittedly compensable injury?
 c. Whether plaintiff was underpaid temporary total disability compensation from 10 March 2001 to 4 September 2001, and from 7 October 2001 to 8 April 2002? *Page 3 
 d. Whether plaintiff is entitled to permanent partial disability compensation pursuant to N.C. Gen. Stat. § 97-31(23)?
 e. Whether plaintiff is entitled to additional medical compensation consisting of ongoing treatment for his admittedly compensable injury by accident?
 f. Whether defendant is estopped from asserting defenses during the period of time it refused to acknowledge liability (24 August 2001 through 3 November 2005)?
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibits #1-7: I.C. Forms
 b. Stipulated Exhibit #8: Employment Security records.
 c. Stipulated Exhibit #9: Transcript of testimony taken in IC No. 983909
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the undersigned make the following:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was 62 years old and a high school graduate. Plaintiff worked for defendant, its predecessors and successor for 29.5 years. He worked in the refining department for the 20 years preceding his date of injury.
2. On 19 February 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant, resulting in an injury to his low back. As a result of his injury by accident to his low back, plaintiff received medical treatment by Dr. Richard L. *Page 4 
Weiss, a neurosurgeon, and Dr. Margaret O. Burke, a physiatrist, both of Mountain Neurological Center, P.A. and underwent a right L4-5 and L5-S1 microlumbar discectomy on 30 March 2001, performed by Dr. Weiss.
3. Following surgery, plaintiff underwent physical therapy and was released to return to work with work restrictions of no lifting of greater than 20 lbs. and no repetitious bending or lifting, based upon a functional capacity evaluation performed on 17 September 2001.
4. On 9 September 2001, plaintiff returned to work at the Gatehouse. The Gatehouse job duties consisted of answering the telephone, weighing in trucks, and checking IDs of visitors and employees entering the plant. Plaintiff was unable to perform the walking and standing duties of the position due to low back pain, and he was unable to perform the telephone answering duties due to low back pain and hearing difficulties. In the Gatehouse position, plaintiff was paid his pre-injury wages. Plaintiff did not apply for the Gatehouse position, but was assigned there by the Workers' Compensation Coordinator.
5. David Poor and Robert Manley testified about the Gatehouse position that was utilized to provide return to work opportunity and vocational rehabilitation for workers' compensation injured employees and long term disability employees to reduce the number of workers' compensation loss time and long term disability claims. These jobs were neither available for other workers in the plant through posting of, or bidding for, the positions within the plant, nor were they available for persons outside of the plant to apply for through listing with the Employment Security Commission or otherwise. These jobs paid the injured workers the same rates they were making performing their old jobs. Prior to the utilization of these jobs for workers' compensation and long-term disability employees, the Gatehouse position was performed by an outside vendor doing private security. *Page 5 
6. Due to his chronic low back problems, including pain, plaintiff was taken back out of work from the Gatehouse on 7 October 2001. He remained out of work until 8 April 2002, when he returned to work in a position in the Core Room. The Core Room job consisted of cleaning the paper off of used plastic cores so that they could be reused. The job had previously been performed off-site. Again, this position was limited to workers with restrictions and was not available to other workers in the plant or outside applicants. Injured workers were paid the wages they were receiving prior to their injuries. Plaintiff was primarily inactive in this position, but sat and "cut a few cores with a razor knife."
7. The undersigned find as fact that although both the Core Room job and the Gatehouse job were real jobs that had been performed in the past, plaintiff did not and was not required to perform the duties of those jobs. Instead, the positions were used to occupy plaintiff's time and provide a mechanism for defendant-employer to pay plaintiff his salary. The evidentiary record is devoid of evidence that other employers would hire plaintiff or others at comparable wages in the same type of positions. Therefore, these positions were not indicative of plaintiff's ability to earn wages in the competitive job market.
8. Plaintiff remained in the Core Room until the plant shutdown on 15 August 2002. Plaintiff received unemployment compensation from the time the plant shut down until approximately 4 May 2003, at a rate of $408 per week. During this period, plaintiff looked for at least two jobs per week, but was unsuccessful in obtaining any employment. Thereafter, plaintiff applied for Social Security Disability and discontinued his job search due to his chronic low back pain problems.
9. Plaintiff was awarded Social Security Disability benefits in June 2004 with an effective date of entitlement of 1 August 2001. Plaintiff has been a Medicare beneficiary since 1 *Page 6 
August 2003.
10. Given the stipulations of the parties regarding the correct amount of plaintiff's average weekly wage and corresponding compensation rate, plaintiff was underpaid temporary total disability from 10 March 2001 to 9 September 2001, and from 7 October 2001 to 8 April 2002, in the amount of $117.90 per week.
11. Plaintiff reached the point of maximum medical improvement on 21 June 2002, and was assigned a 10% permanent partial disability rating by Dr. Burke. Despite her opinion that plaintiff had reached maximum medical improvement, Dr. Burke opined that Plaintiff could benefit from continued treatment that may improve his symptoms. Plaintiff continued to treat with Dr. Burke until October 2002, at which time Plaintiff's medical compensation ceased being paid by Defendant's purported successor in interest.
12. Defendant has provided no indemnity compensation to plaintiff since 8 April 2002, and has provided no medical compensation to plaintiff since 2 October 2002; however, the cessation of benefits was due to defendant improperly transferring its liability under the Act to another party. Defendant-employer deliberately refused to provide indemnity or medical compensation to Plaintiff since October of 2002, or any claims administration since August 24, 2001, as Defendant-employer contested its liability, along with all the claims that arose during its period of self-insurance after its sale of the Ecusta Division on August 24, 2001. Goodson v. P.H. Glatfelter Co., 171 N.C. App. 596,615 S.E.2d 350 (2005),discretionary review denied, 360 N.C. 63, 623 S.E.2d 582
(2005), which is controlling precedent herein, established Defendant-employer's liability for coverage of Plaintiff's claim. Although Defendant-employer had knowledge of Plaintiff's claim at the time its purported successor in interest ceased payment of indemnity and medical compensation, Defendant-employer neglected to raise defenses to *Page 7 
Plaintiff's claim until after the North Carolina Supreme Court denied Defendant-employer's petition for discretionary review of the North Carolina Court of Appeals decision affirming the North Carolina Industrial Commission's Opinion and Award in Goodson, finding and concluding that Defendant-employer's attempted transfer of its self-insured workers' compensation liabilities to its purported successor in interest was ineffective as a matter of law, and thusvoid ab initio. (emphasis added). Defendant-employer's legal liability for Plaintiff's claim has remained uninterrupted since February 19, 2001. Defendant's deliberate refusal to provide medical and indemnity compensation to Plaintiff when it had legal liability to do so, and its neglect to assert defenses to Plaintiff's claim at the proper time, are misleading acts upon which Plaintiff relied to his detriment.
13. Plaintiff has met his burden of proof that he has been unable to earn any wages in any employment from August 15, 2002, to the present and continuing by means of medical evidence, vocational evidence and evidence of futility; i.e., his admittedly compensable back injury of February 19, 2001; his resulting back surgery; his permanent impairment including work restrictions; his resulting chronic low back pain; his unsuccessful job search; and Defendant's deliberate refusal to provide medical compensation and indemnity compensation after October, 2002, which rendered any job search by Plaintiff following the expiration of his unemployment benefits futile.
 ***********
Based upon the competent evidence of record and the reasonable inferences flowing therefrom, the undersigned make the following additional:
 CONCLUSIONS OF LAW
1. On 19 February 2001, plaintiff sustained an admittedly compensable injury by *Page 8 
accident to his back, for which he is entitled to temporary total disability compensation in the amount of $611.58 per week from 15 August 2002, when the plant shut down to the present and continuing. Plaintiff's burden of proof on total loss of earning capacity is met with medical evidence of a 10% permanent partial impairment of the back with permanent work restrictions and resulting chronic low back pain; with vocational evidence of an unsuccessful job search throughout the period of receipt of unemployment benefits; and with evidence of futility when the above evidence is combined with Defendant's deliberate refusal to pay medical and indemnity compensation since October, 2002, while legally liable therefor. Hilliard v. Apex Cabinet Company,305 N.C. 593, 290 S.E.2d 682 (1982); Knight v. Wal-Mart Stores, Inc.,149 N.C. App. 1, 562 S.E.2d 434 (2002), aff'd per curiam 357 N.C. 44,577 S.E.2d 620 (2003); Russell v. Lowes Products Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was underpaid temporary total disability from 10 March 2001 to 9 September 2001 (26.28 weeks), and from 7 October 2001 to 8 April 2002 (26.28 weeks) in the amount of $117.90 per week. Therefore, plaintiff is entitled to payment by Defendant in the amount of $6,196.82 for those periods. Plaintiff is further entitled to an additional $619.68, constituting a 10% penalty on the amount owed as not paid when due and payable. N.C. Gen. Stat. § 97-18(g).
3. Plaintiff's post-injury employments in the Gatehouse and the Core Room, while "real jobs," were not indicative of plaintiff's earning capacity as he was not required to actually perform the jobs in question, but was merely placed in the positions to facilitate Defendant-employer's payment of plaintiff's wages. People's v. ConeMills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986); Saums v. Raleigh Cmty.Hospital, 346 N.C. 760, 487 S.E.2d 746, (1997). *Page 9 
4. Defendant is entitled to a credit for unemployment benefits paid subsequent to plaintiff's injury by accident. N.C. Gen. Stat. § 97-42.1.
5. Plaintiff is entitled to have Defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, including a return evaluation by Dr. Burke and any further treatment she might recommend. N.C. Gen. Stat. § 97-2(19).
6. Defendant is equitably estopped by laches from asserting defenses which should have been asserted during the period of time it contested its liability for its self-insured claims and deliberately refused to provide Plaintiff with indemnity and medical compensation. N.C. Gen. Stat. §§ 97-25; 97-80; Goodson v. P.H. Glatfelter Co., 171 N.C. App. 596,615 S.E.2d 350 (2005), discretionary review denied, 360 N.C. 63,623 S.E.2d 582 (2005); Craver v. Dixie Furniture Company, 115 N.C. App. 570,447 S.E.2d 789 (1994); Hand v. Fieldcrest Mills, Inc., 85 N.C. App. 141,355 S.E.2d 141 (1987).
 ***********
Based upon the foregoing, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $611.58 per week for the period from 15 August 2002 to the present and continuing, subject to a credit to defendant for unemployment benefits paid. As much of said compensation as has accrued shall be paid in a lump sum.
2. Subject to a reasonable attorney's fee herein approved, defendant shall pay to plaintiff an additional lump sum of $6,816.50, representing the money due for payment of *Page 10 
temporary total disability compensation in an amount less than that to which plaintiff was entitled and a penalty assigned thereto.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraphs 1 and 2 above is hereby approved to be deducted from the lump sum due plaintiff and paid directly to counsel. Thereafter, every fourth payment shall be made directly to plaintiff's counsel.
4. Defendant shall pay medical expenses incurred or to be incurred, including a return evaluation by Dr. Burke and any further treatment she might recommend, when bills for the same have been approved, in accordance with the provisions of the Act.
5. Defendants shall pay the costs.
This the __ day of August 2007.
 S/________________________
 PAMELA T. YOUNG
 COMMISSIONER
CONCURRING: S/________________________ BERNADINE S. BALLANCE COMMISSIONER
S/________________________ DANNY L. McDONALD COMMISSIONER *Page 1