An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e    P r o c e d u r e .

NO. COA14-119
NORTH CAROLINA COURT OF APPEALS

Filed:  15 July 2014

MICHAEL A. DEMAYO and KELLIE H. DEMAYO,
　　　Plaintiffs,

　　　v.

STONE BY LYNCH, LLC, and L.C. LYNCH, a/k/a L.C. Lynch, Jr.,
　　　Defendants.

Mecklenburg County
No. 12 CVS 19847

Appeal by defendants from order entered 17 September 2013 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 May 2014.

>　*Horack, Talley, Pharr & Lowndes, P.A., by Gregory L. Shelton and John W. Bowers, for plaintiffs-appellees.*
>
>　*Kenneth T. Davies, for defendants-appellants.*

MARTIN, Chief Judge.

Defendants Stone By Lynch, LLC and L.C. Lynch a/k/a L.C. Lynch, Jr. appeal from an order denying their motion, made pursuant to N.C.G.S. § 1A-1, Rules 60 and 68.1, to vacate a 1 November 2012 judgment entered against them and in favor of plaintiffs Michael A. DeMayo and Kellie H. DeMayo by the

Mecklenburg County Clerk of Court.  We affirm.

Our recitation of the facts and procedural history is limited to those events relevant to the issues presented on appeal.  Plaintiffs engaged JAS-AM, Inc., a North Carolina general contractor, to build a new residential home for them in Charlotte, North Carolina.  In November 2009, JAS-AM entered into a construction subcontract with defendant Stone By Lynch to furnish and install all of the limestone and other stone masonry work required for plaintiffs' new residence.  In January 2010, defendant Stone By Lynch entered into a second-tier supply agreement with Riverside Cut Stone, Inc. ("Riverside") to supply the limestone for plaintiffs' construction project.

In December 2011, Riverside filed a subrogation claim of lien with the Mecklenburg County Clerk of Court against plaintiffs' property, and filed a lien enforcement action in Mecklenburg County against plaintiffs, JAS-AM, and defendant Stone By Lynch.  In turn, defendant Stone By Lynch filed a subrogation claim of lien against plaintiffs' property in the amount of $91,881.00, and filed cross-claims against plaintiffs and JAS-AM in Riverside's lien enforcement action.  Riverside's subrogation claim of lien was discharged after plaintiffs and JAS-AM posted a cash bond with the Mecklenburg County Clerk of Court in the amount of the lien totaling $255,626.00; no bond

was posted with respect to defendant Stone By Lynch's subrogation claim of lien.

On 21 January 2012, defendant L.C. Lynch, Jr., the manager of Stone By Lynch, met with plaintiff Michael A. DeMayo and Sajjan Dhaliwal, the president of JAS-AM, at plaintiff DeMayo's request. At this meeting, plaintiff DeMayo presented defendant Lynch with a Settlement Agreement and Confession of Judgment for Lynch's signature. The Settlement Agreement provided that the parties——plaintiffs, JAS-AM, defendant Stone By Lynch, and defendant Lynch, individually——agreed that, within two days of the execution of the Settlement Agreement, defendant Stone By Lynch would cause to be filed a notice of satisfaction of its claim of lien and a notice of voluntary dismissal with prejudice, and would execute and deliver a final lien waiver and release, as well as a Confession of Judgment. In return, plaintiffs agreed that they would pay defendant Stone By Lynch $60,000.00 in fixed increments subject to the following schedule and milestones: plaintiffs would pay the first $30,000.00 upon the execution of the filings and deliverables requested in the Settlement Agreement; plaintiffs would pay the next $20,000.00 upon the completion of defendant Stone By Lynch's scope of work for plaintiffs' construction project; and plaintiffs would pay a final payment of $10,000.00 "upon certification by [JAS-AM] and

[plaintiffs] that [defendant Stone By Lynch] has satisfactorily addressed punch list items." The Settlement Agreement further provided that the parties "have read and fully understood the provisions of this Agreement prior to its execution and delivery." This Settlement Agreement was signed twice by defendant Lynch two days later on 23 January 2012; once on behalf of himself and once on behalf of defendant Stone By Lynch as its managing member. The Confession of Judgment, signed by defendant Lynch on 23 January 2012 on behalf of defendant Stone By Lynch, further provided that defendants authorized the entry of a judgment, without action, in plaintiffs' favor, in the amount of $170,626.00, in the event that defendants "fail[ed] to hold harmless [p]laintiffs as required under that Settlement Agreement entered by the [p]laintiffs, [d]efendants, and JAS-AM, Inc., on or about January 23, 2012."

Following the execution of the Confession of Judgment, the Settlement Agreement, and the final lien waiver and release on 23 January 2012 by defendant Lynch, and the execution of the notices of satisfaction of claim of lien and of voluntary dismissal of cross-claims by defendant Stone By Lynch's then-counsel on 27 January 2012, plaintiffs paid defendant Stone By Lynch the first two payments owed under the terms of the Settlement Agreement. Plaintiffs tendered payment for the final

$10,000.00 owed under the Settlement Agreement on 27 June 2012. Accompanying that check was a letter from plaintiffs' counsel indicating that acceptance thereof constituted a waiver and release of any claims by defendants against plaintiffs, and that plaintiffs "reserve[d] any and all claims and causes of action" against defendants "under the [Settlement Agreement] or otherwise." Defendants returned this check to plaintiffs two days later, purportedly because plaintiffs "allowed [a] deadline to pass without making a payment" and defendants "now consider[ed] [plaintiffs] in breach of the settlement agreement." Two weeks later, on 13 July 2012, defendants' counsel sent a letter to counsel for plaintiffs and JAS-AM indicating that his clients were "intent on removing the burden of the confessions of judgment and settlement agreement which you [sic] clients have placed them under"; "a burden which was imposed upon them by forcing them to sign the documents without being given the opportunity to study the documents for themselves, or seek the counsel of their attorney who was representing them at the time."

One month later, the Mecklenburg County Superior Court entered an order arising from Riverside's lien enforcement action against defendant Stone By Lynch, JAS-AM, and plaintiffs, in which it recognized that plaintiffs and Riverside had reached

a settlement with respect to the $255,626.00 cash bond posted by plaintiffs in the Riverside action. The order directed the Clerk of Court to deliver a check for $70,000.00 made payable to Riverside's counsel, and to return the remaining balance plus interest to plaintiffs, the proportional share of which would be released to JAS-AM. Although the terms of the Settlement Agreement provided that defendants would indemnify plaintiffs and JAS-AM for all loss "arising from, relating to, or in any manner connected with the [Riverside lien enforcement] Lawsuit, the [plaintiffs'] Property, the Project funds, the [$255,626.00] Cash Bond, or any combination thereof," because of both the return of the final $10,000.00 check and counsel's letter expressing that defendants no longer intended to be bound by the "burdens of the confessions of judgment and settlement agreement," on 31 October 2012, plaintiffs filed the Confession of Judgment that had been executed by defendant Lynch on 23 January 2012.

While the Confession of Judgment had authorized entry of a judgment against defendants and in favor of plaintiffs in the amount of $170,626.00, after applying credits to the balance due, on 1 November 2012, the Clerk of Court entered a judgment ordering defendants to pay plaintiffs $55,000.00. On 21 December 2012, defendants filed a "Motion in the Cause To

Vacate Judgment Pursuant to Rule 60(b) and Rule 68.1," on the grounds that defendants "withdrew their consent to the Confessions of Judgment via letter and draft of a complaint to [plaintiffs] on July 13, 2012." On 17 September 2013, after hearing the matter, the trial court denied defendants' Rule 60 motion. Defendants appealed.

_____

Defendants sole contention on appeal is that the trial court erred in denying defendants' Rule 60 motion to vacate the 1 November 2012 judgment entered by the Clerk of Court. Defendants assert that they "withdrew their consent to the Confession of Judgment before it was filed by [plaintiffs]" on 31 October 2012, so that the clerk's judgment entered upon the Confession of Judgment is void as a matter of law. After reviewing the record before us, we affirm the order of the trial court.

N.C.G.S. § 1A-1, Rule 68.1 provides that a confession of judgment "may be entered without action at any time[,] . . . may be for money due or for money that may become due," N.C. Gen. Stat. § 1A-1, Rule 68.1(a) (2013), and "remains as security for the sums thereafter to become due." N.C. Gen. Stat. § 1A-1, Rule 68.1(e). "The purpose of such confession is to provide an expeditious method for entering judgment against one who does

not dispute a debt, without the necessity of filing a lawsuit." 2 G. Gray Wilson, *North Carolina Civil Procedure* § 68.1-1, at 68A-3 (3d ed. 2007). "A confession of judgment is essentially a consent judgment in that it depends on the agreement of the parties which the court will enforce." *Id.* at 68A-2 (citing *Yarborough v. Yarborough*, 27 N.C. App. 100, 106, 218 S.E.2d 411, 415, *cert. denied*, 288 N.C. 734, 220 S.E.2d 353 (1975)); *cf. id.* ("Judgment by confession differs from an ordinary consent judgment, however, to the extent that its form and manner of entry and enforcement are supervised and regulated by statute, in this instance [N.C.G.S. § 1A-1,] Rule 68.1." (footnote omitted) (citing *Farmers Bank of Clayton v. McCullers*, 201 N.C. 440, 443, 160 S.E. 494, 496 (1931))). "The judgment depends upon the consent of the parties, and the court gives effect to it as the agreement of the parties. It would not be valid unless the parties consented . . . ." *Ballard v. Hunter*, 12 N.C. App. 613, 618, 184 S.E.2d 423, 426-27 (1971) (internal quotation marks omitted), *cert. denied*, 280 N.C. 180, 185 S.E.2d 704 (1972).

Here, defendants assert that they "withdrew their consent to the Confession of Judgment before it was filed by [plaintiffs]." According to the record, defendant Lynch signed the Settlement Agreement, the Confession of Judgment, and the

final lien waiver and release on 23 January 2012, two days after his meeting with plaintiff DeMayo and the president of JAS-AM, and defendant Lynch's wife notarized his signing of the Confession of Judgment. On 27 January 2012, the notices of satisfaction of claim of lien and of voluntary dismissal of cross-claims, as well as the final lien waiver and release were executed and sent by defendant Stone By Lynch's then-counsel to plaintiffs and to the president of JAS-AM. Defendants concede that they accepted two payments totaling $50,000.00 from plaintiffs in accordance with the terms of the Settlement Agreement, and that plaintiffs tendered payment for the third and final payment due under the terms of the Settlement Agreement, which payment was refused by defendants. Although defendants presented argument to the trial court that defendant Lynch was incapable of understanding the documents at the time he signed them because he was "medicated at the time he met with DeMayo and Dhaliwal," "suffers from dyslexia, causing him to need assistance with reading comprehension," and that plaintiff DeMayo and Mr. Dhaliwal "refused to give Lynch a chance to read the document which turned out to be a settlement agreement and confession of judgment" and "demanded that Lynch sign it [sic] on the spot," the trial court rejected these assertions as "ridiculous," and defendants have brought forward no such

challenges on appeal. Instead, in their brief, defendants assert only, and without support, that a letter stating that they were "intent on removing the burden of the confessions of judgment and settlement agreement"——under which they had already accepted two of three settlement payments——was sufficient to revoke defendant Lynch's consent to the terms of the Settlement Agreement. Defendants fail to direct this Court to any relevant legal authority in support of their assertion, and "[i]t is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein." *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358, *supersedeas and disc. review denied*, 360 N.C. 63, 623 S.E.2d 582 (2005); *see also Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (per curiam) ("It is not the role of the appellate courts . . . to create an appeal for an appellant."), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005). Thus, we reject defendants' argument.

Affirmed.

Judges STEELMAN and DILLON concur.

Report per Rule 30(e).